# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| In Re: | ) | Bankruptcy Case No. 19-05657-jw |
| | ) | |
| Amir Golestan, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | NOTICE OF MOTION SEEKING |
| | ) | 11 U.S.C. §362(d) RELIEF |
| | ) | |
| | ) | |

**TO:  DEBTOR, DEBTOR'S ATTORNEY, TRUSTEE AND THOSE NAMED IN THE ATTACHED MOTION:**

PLEASE TAKE NOTICE THAT ON **December 11, 2019, at 10:30 A.M.**, at the King and Queen Building, 145 King Street, Room 225, Charleston, South Carolina 29401, a hearing will be held on the attached Motion.

Within fourteen (14) days after service of the attached Motion, and the Notice of Motion, accompanied by the movant's Certification of Facts, any party objecting to the relief sought shall:

- File with the Court a written objection to the §362 motion;

- File with the Court a Certification of Facts; and

- Serve the above two items on the movant at the address shown below;

- File a certificate of such service with the Court.

Should you fail to comply with this procedure, you may be denied the opportunity to appear and be heard on this proceeding before the court.

| | |
|---|---|
| DATE OF SERVICE: | November 15, 2019 |
| MOVANT: | TBG Funding, LLC |
| ATTORNEY: | J. Kershaw Spong (531) |
| ATTORNEY'S ADDRESS: | P.O. Box 11449<br>Columbia, SC 29211 |

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In Re: | ) Bankruptcy Case No.  19-05657-jw |
| | ) |
| Amir Golestan, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

## MOTION OF TBG FUNDING, LLC TO TERMINATE AUTOMATIC STAY

TBG Funding, LLC (hereafter called "Lender") hereby moves for relief from the automatic stay of 11 U.S.C. §362(a), by termination of the stay under 11 U.S.C. §§363(e), and/or 362(d)(3) on the following grounds:

1.　　This Court has jurisdiction of this proceeding under 28 U.S.C. §157 and Rule 29.01 of the Local Rules for the United States District Court for the District of South Carolina; this Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(G).

2.　　Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code on October 28, 2019.

3.　　Lender is the holder of an allowed unsecured claim against Debtor in the principal amount of Seven Hundred Eighty-nine Thousand Nine Hundred Thirty-Four and 50/100 ($789,934.50) Dollars as of October 28, 2019.

4.　　Lender is the holder of a Promissory Note, Mortgage, Assignment of Rents, and UCC-1 Financing Statement ("Loan Documents") executed by Seven and Rose, LLC and MICFO, LLC.  The debt is secured by real property located at 198 East Bay Street, Units 200 and 201, Charleston, South Carolina (hereafter called the "Collateral").

5.　　Debtor guaranteed the loan to Seven and Rose, LLC and MICFO, LLC.  A copy of Lender's filed Proof of Claim with attached Loan Documents and Guaranty is attached hereto.

6.     The loan was declared in default and a foreclosure action was filed in the Charleston County Court of Common Pleas on June 1, 2019.

7.     A foreclosure hearing in this matter was originally scheduled for November 12, 2019; however, was canceled due to the Debtor's bankruptcy filing on October 28, 2019.

8.     Lender is seeking relief from the automatic stay to proceed with its foreclosure action against Seven and Rose, LLC and MICFO, LLC and will not be seeking a deficiency judgment against the Debtor in his role as guarantor except as limited to establishing a claim in Debtor's personal bankruptcy for any amounts not recovered in the foreclosure.

9.     Cause exists to terminate the automatic stay for cause, including lack of adequate protection to Lender, to allow Lender to proceed with its foreclosure action.

10.    Lender moves the stay imposed by Federal Bankruptcy Rule 4001(a)(3) be waived pursuant to 11 U.S.C. §363(e) and/or 362(d)(3).

WHEREFORE, Lender requests that the Court grant it relief from the stay of 11 U.S.C. §362(a) for cause, including defaults under the Loan Documents and lack of adequate protection, by terminating the stay as to Lender's Collateral so that it may proceed with its foreclosure action against Seven and Rose, LLC and MICFO, LLC.

Robinson Gray Stepp & Laffitte, LLC

J. Kershaw Spong [531]
P.O. Box 11449
Columbia, SC  29211
Tel:  (803) 929-1400
Fax:  (803) 929-0300
Email:  kspong@robinsongray.com

Attorney for TBG Funding, LLC

Columbia, South Carolina
November 15, 2019

2

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| In Re: | ) | Bankruptcy Case No. 19-05657-jw |
| | ) | |
| Amir Golestan, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | CERTIFICATION OF FACTS |
| | ) | |
| | ) | |

In the above-entitled proceeding, in which relief is sought by TBG Funding, LLC from the automatic stay in accordance with 11 U.S.C. §362, I do hereby certify to the best of my knowledge, the following:

1.   NATURE OF MOVANT'S INTEREST:

Holder of an unsecured claim due to Debtor's guaranty under a note, mortgage, assignment of rents, and UCC financing statement.

2.   BRIEF DESCRIPTION OF SECURITY INTEREST, COPY ATTACHED (if applicable):

First lien as shown by the loan documents attached hereto.

3.   DESCRIPTION OF PROPERTY ENCUMBERED BY STAY (include serial number, lot and block number, etc.):

Real property located at 198 East Bay Street, Units 200 and 201, Charleston, South Carolina

4.   BASIS FOR RELIEF (property not necessary for reorganization, Debtor has no equity, property not property of estate; include applicable subsection of §362):

Lender is seeking relief from the automatic stay of § 362(d)(1) so that it may proceed with its foreclosure action against Seven and Rose, LLC and MICFO, LLC for the causes of default under the note, mortgage, assignment of rents, and UCC financing statements. Lender is entitled to relief from the automatic stay under 11 U.S.C. §362(d)(2) because Lender is not seeking a deficiency judgment against Debtor.

5.   PRIOR ADJUDICATION BY OTHER COURTS, COPY ATTACHED (decree of foreclosure, order for possession, levy of execution, etc., if applicable):

None.

6.   VALUATION OF PROPERTY, copy of Valuation attached (Appraisal, Blue Book, etc.):

| | |
|---|---|
| Fair Market Value: | $244,000.00 – Suite 201 |
| | $630,000.00 – Suite 200 |
| | $874,000.00 – Total |
| Senior Liens: | $0.00 |
| Movant's Lien: | $789,934.50 |
| Other Liens: Wells Fargo judgment (List in order of priority) | $178,045.54 |
| Net Equity: | $0.00 |

Source/Basis of Value:   Deeds of Record

7.   AMOUNT OF DEBTOR'S ESTIMATED EQUITY (using figures from paragraph 6, supra):

$0.00

8.   MONTH AND YEAR IN WHICH FIRST DIRECT POST-PETITION PAYMENT CAME DUE TO MOVANT (if applicable):

N/A

9.   (a)   For Movant/Lienholder (if applicable):  List or attach a list of all post-petition payments received directly from debtor(s), clearly showing date received, amount, and month and year for which each such payment was applied.[1]

No post-petition payments have been received by Lender.

---

[1] This requirement may not be met by the attachment of a payment history generated by the movant. Such attachment may be utilized as a supplement to a complete and detailed response to (9)(a) above, which should be shown on this certification.

(b)      For Objecting Party (if applicable):  List or attach a list of all post-petition payments included in the Movant's list from (a) above which objecting party disputes as having been made.  Attach written proof of such payment(s) or a statement as to why such proof is not available at the time of filing this objection.

10.     MONTH AND YEAR FOR WHICH POST-PETITION ACCOUNT OF DEBTOR(S) IS DUE AS OF THE DATE OF THIS MOTION:

The loan has matured and the entire balance is due and owing.

ROBINSON GRAY STEPP & LAFFITTE, LLC


J. Kershaw Spong [531]
Post Office Box 11449
Columbia, SC  29211
Tel: (803) 929-1400
Fax: (803) 929-0300
Email:  kspong@robinsongray.com

Attorneys for TBG Funding, LLC

Columbia, South Carolina

November 15, 2019

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| In Re: | ) | Bankruptcy Case No. 19-05657-jw |
| | ) | |
| Amir Golestan, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE BY MAIL

This is to certify that I am a paralegal in the firm of Robinson Gray Stepp & Laffitte, LLC, attorneys for TBG Funding, LLC; that I have this day caused to be served upon the persons named below the **Notice of Motion, Motion to Terminate Automatic Stay, and Certification of Facts** in the foregoing matter by placing copies of same in the United States Mail, postage prepaid, in envelopes addressed as follows:

Amir Golestan
4639 Wilson Road
Meggett, SC  29449

Kevin Campbell, Esquire
Post Office Box 684
Mount Pleasant, SC  29465

US Trustee's Office
Via electronic service (CM/ECF)

Amex
Correspondence/Bankruptcy
PO Box 981540
El Paso, TX 79998

Averill Law Firm
895 Island Park Dr #202
Charleston, SC 29492

Bank of America
4909 Savarese Circle
Fl1-908-01-50
Tampa, FL 33634

Barclays Bank Delaware
Attn: Correspondence
PO Box 8801
Wilmington, DE 19899

Bleeker Law Firm
561 Savannah Hwy
Charleston, SC 29417

Chase Card Services Attn: Bankruptcy
PO Box 15298
Wilmington, DE 19850

Glenn Keyes Architects
12 Vanderhorst St #B
Charleston, SC 29403

Internal Revenue Service
Insolvency Group 6
MDP 39
1835 Assembly Street
Columbia, SC 29201

JP Morgan
PO Box 469030
Denver, CO 80246

Kristin Golestan
125 Tradd St.
Charleston, SC 29401

McLaren & Lee
1508 Laurel St
Columbia, SC 29211

Navitas Credit Corp.
111 Executive Drive Suit
Columbia, SC 29210

PNC Bank
Attn: Bankruptcy
Po Box 94982: Mailstop Br-Yb58-01-5
Cleveland, OH 44101

South State Bank
PO Box 118068
Charleston, SC 29423

TBG Funding
3839 Flatlands Avenue #201
Brooklyn, NY 11234

The Bishop Fields
1616 Rifle Range Rd
Mount Pleasant, SC 29464

U.S. Bancorp
Attn: Bankruptcy 800 Nicollet Mall
Minneapolis, MN 55402


ROBINSON GRAY STEPP & LAFFITTE, LLC

Melissa H. White, Paralegal for
J. Kershaw Spong [#531]
P.O. Box 11449
Columbia, SC  29211
(803) 929-1400


Columbia, South Carolina

November 15, 2019

**Fill in this information to identify the case:**

Debtor 1        Amir Golestan

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: _____  District of  South Carolina
                                                                    (State)

Case number    19-05657-jw

---

## Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

---

### Part 1:    Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | TBG Funding, LLC |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ■ No |
| | ☐ Yes.  From whom? _____ |

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

TBG Funding LLC, c/o The Battery Group

Name
3839 Flatlands Avenue

Number    Street

Brooklyn           NY            11234
City              State          ZIP Code

Contact phone    718-252-9327

Contact email    h.jury@thebatterygroup.com

Where should payments to the creditor be sent? (if different)

Name

Number    Street

City              State          ZIP Code

Contact phone  _____

Contact email  _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

— — — — — — — — — — — — — — — — — — — — — — — —

| | |
|---|---|
| 4. **Does this claim amend one already filed?** | ■ No |
| | ☐ Yes.  Claim number on court claims registry (if known) _____   Filed on _____<br>MM  / DD  / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ■ No |
| | ☐ Yes.  Who made the earlier filing? _____ |

---

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?** $ 789,934.50 . Does this amount include interest or other charges?

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

guaranty of money loaned to Seven and Rose, LLC and MICFO, LLC

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

Nature of property:
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection: _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____
Amount of the claim that is secured: $_____
Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed) _____%
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

**12. Is or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

|  | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    11/ 11/2019
　　　　　　　　　　MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | J. | Kershaw | Spong |
|---|---|---|---|
|  | First name | Middle name | Last name |

| Title | Attorney #531 |
|---|---|

| Company | Robinson Gray Stepp & Laffitte, LLC |
|---|---|
|  | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | 1310 | Gadsden Street |  |
|---|---|---|---|
|  | Number | Street |  |
|  | Columbia | SC | 29201 |
|  | City | State | ZIP Code |

| Contact phone | (803) 929-1400 | Email | kspong@robinsongray.com |
|---|---|---|---|

243

Amir Golestan
Case No. 19-05657-jw
Attachment to Proof of Claim of TBG Funding, LLC

| | |
|---|---|
| $675,000.00 | Principal due from March 6, 2019 |
| 1,125.00 | Interest due from March 1, 2019 to March 5, 2019 @12% per annum |
| 104,400.00 | Interest due from March 6, 2019 to October 28, 2019 @24% per annum (default rate per terms of Promissory Note) |
| 337.50 | Late charges |
| 1,810.65 | Property taxes |
| 350.00 | Title search |
| 6,911.35 | Attorney's fees and costs |
| $789,934.50 | |

## PROMISSORY NOTE

**$675,000.00**                                                        **Date: March 7, 2018**

**PROMISE TO PAY.** SEVEN AND ROSE, LLC, a South Carolina limited liability company, having an address at 4639 Wilson Road, Meggett, SC 29449 ("SEVEN") and MICFO, LLC, a Nevada limited liability company, having an address at 198 East Bay Street, Unit 201, Charleston, SC 29401 ("MICFO", together with SEVEN, individually and collectively, the "Borrower") promise to pay to TBG Funding LLC, a Delaware limited liability company having an address at c/o the Battery Group, LLC, 3839 Flatlands Avenue, Suite 201, Brooklyn, NY 11234 (the "Lender"), in lawful money of the United States of America, the principal amount of SIX HUNDRED SEVENTY FIVE THOUSAND AND 00/100 ($675,000.00) DOLLARS (the "Loan Amount") or so much as may be outstanding, together with interest on the unpaid outstanding principal balance thereof. Borrower also promises to pay all applicable fees and expenses.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued and unpaid interest thereon on March 6, 2019 (the "Maturity Date"). In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date on the amount then outstanding, beginning April 1, 2018 in an amount equal to $6,750.00 per month with all subsequent interest payments to be due on the same day of each month after that.

Provided that there has not occurred an Event of Default at the time of such request, or an event which, with the passage of time, would constitute an Event of Default, the Borrower may, at least thirty (30) days prior to the Maturity Date, request in writing an extension (an "Extension Notice") to the Maturity Date of six (6) months. In such event, Borrower shall, simultaneous with the delivery of the Extension Notice, (a) pay an extension fee to Lender equal to one and 75/100 percent (1.75%) of the original principal balance due under this Note (b) deliver $20,250.00 to Lender which amount shall be held in reserve and applied in the same manner as the interest reserve hereunder and (c) deliver an amount necessary to pay any real estate taxes and insurance premiums that may become due during such extension period.

Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's principal office at c/o the Battery Group, LLC, 3839 Flatlands Avenue, Suite 201, Brooklyn, NY 11234 or at such other place as Lender may designate in writing.

**GUARANTY.** The loan evidenced hereby is guaranteed by AMIR GOLESTAN (the "Guarantor"), principal of the Borrower, and is secured by a first priority mortgage (the "Mortgage") on those certain properties known as 198 East Bay Street, Units 200 and 201, Charleston, SC 29401 (individually and collectively, the "Property").

**INTEREST RATE.** The interest rate on this Note shall equal the lesser of (a) twelve percent (12%) per annum or (b) the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 30/360 simple Interest basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days before the first full month is calculated on the basis of the actual days and a 360-day year. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to the Lender at the address set forth above. Notwithstanding the foregoing, the principal balance due under this Note, or any portion thereof, may be prepaid, upon thirty (30) days written notice to the Lender, provided that the Borrower shall pay to the Lender with each such prepayment, a prepayment premium equal to the following:

    (a)    Six (6%) percent of the prepaid Loan Amount during month 1;

    (b)    Five (5%) percent of the prepaid Loan Amount during month 2;

    (c)    Four (4%) percent of the prepaid Loan Amount during month 3;

    (d)    Three (3%) percent of the prepaid Loan Amount during month 4;

    (e)    Two (2%) percent of the prepaid Loan Amount during month 5;

    (f)    One (1%) percent of the prepaid Loan Amount during month 6.

There shall be no prepayment premium payable after month 6.

For purposes hereof, a "month" shall mean the calendar month period following the date hereof, with the date hereof as the starting point. For example, Month 1 shall mean the date hereof through April 6, 2018; Month 2 shall mean April 7, 2018 through May 6, 2018.

Partial pre-payments shall be applied first to accrued and unpaid interest and then to the most remote principal payments due under this Note.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment. This late charge shall be paid to Lender by Borrower for the purpose of defraying the expense incident to the handling of the delinquent payment.

**RETURNED CHECKS.** In the event that any check payable to Lender is returned for any reason, Borrower shall be required to make all subsequent payments via certified check or wire.

**INTEREST AFTER DEFAULT.** Upon an Event of Default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to the lesser of twenty-four (24%) percent or the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note and such failure is not cured within ten (10) days after the occurrence thereof; other than the payment of all amounts due hereunder on the Maturity Date, for which no cure period is applicable.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Guarantor, including, without limitation, the Mortgage.

**Default In Favor of Third Parties.** Borrower or any Guarantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents or Guarantor's ability to repay this Note.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or any Guarantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change In Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Property such that the present or intended use of the Property, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Property or the asserted or actual invalidity of any provision in this Note, any other agreement between the Borrower and Lender or any document delivered by the Borrower to the Lender.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to

Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Change In Ownership.** A sale or transfer of all or a portion of the Property or any change in the beneficial ownership of the equity ownership of Borrower in violation of the Mortgage, or a change in the management or control of Borrower.

**Adverse Change.** The occurrence of any event or events that individually or in the aggregate would have or has had a material adverse effect upon (i) the assets, business, operations, properties or condition, financial or otherwise, of Borrower, (ii) the ability of Borrower to make payment as and when due of any amounts due hereunder, or (iii) the Collateral, which occurrence and effect will be determined by the Lender in the exercise of its reasonable judgment.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Criminal or Civil Action.** The Borrower or any Guarantor becomes the subject of any civil or criminal action.

**Insecurity.** Lender in good faith believes that the prospect of payment or performance of this Note is impaired or otherwise deems itself insecure.

**LENDER'S RIGHTS.** Upon an Event of Default, the entire unpaid principal balance under this Note and all accrued unpaid interest shall become immediately due, and then Borrower shall pay that amount, including, without limitation, any prepayment premium due in connection with the payment of the amounts due hereunder prior to maturity of this Note, including all Extension Terms.

**ATTORNEYS' FEES; EXPENSES.** Upon the occurrence of an Event of Default, Lender may hire or pay someone else to enforce its rights hereunder, at Borrower's sole cost and expense. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of New York.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Charleston County, State of South Carolina or Kings County, State of New York.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by a Mortgage, of even date herewith, by Borrower in favor of Lender.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**COMPLIANCE WITH USURY LAWS.** All agreements between Borrower and Lender are hereby expressly limited so that in no event shall the amount paid or agreed to be paid to Lender for the use, forbearance, or detention of the money loaned under this Promissory Note exceed the maximum amount permissible under the laws of the State of New York. If, at the time of any interest payment, the payment amount due under this Promissory Note is in excess of the legal limit, the obligation shall be reduced to the legal limit. If Lender should ever receive, as interest, an amount that exceeds the highest lawful rate, the amount that would be excessive as interest shall be applied to the reduction of the principal amount owing under this Promissory Note, and not the payment of interest.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. If more than one person has executed this Note, then the obligations under this Note are joint and several.

**[SIGNATURE PAGE TO FOLLOW]**

IF MORE THAN ONE PERSON HAS EXECUTED THIS NOTE, THEN THE OBLIGATIONS UNDER THIS NOTE ARE JOINT AND SEVERAL.

PRIOR TO SIGNING THIS PROMISSORY NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS PROMISSORY NOTE, INCLUDING THE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THIS PROMISSORY NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

SEVEN AND ROSE, LLC

By: _____
    Name: Amir Golestan
    Title: Manager

MICFO, LLC

By: _____
    Name: Amir Golestan
    Title: Manager

STATE OF SOUTH CAROLINA          )
                                 ) ss.:
COUNTY OF _____    )

On the ___ day of March in the year 2018 before me, the undersigned, personally appeared Amir Golestan, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

BP0704855

# PGS:
10

**RECORDATION REQUESTED BY:**
TBG Funding LLC, a Delaware limited liability company
c/o The Battery Group, LLC
3839 Flatlands Avenue, Suite 201
Brooklyn, NY 11234

**WHEN RECORDED MAIL TO:**
Attn: Allen J. Weiss, Esq.
Wachtel Missry LLP
885 Second Avenue
New York, NY 10017

**SEND TAX NOTICES TO:**
Seven and Rose, LLC, a South Carolina limited liability company
MICFO, LLC, a Nevada limited liability company
4639 Wilson Road
Meggett, SC 29449

_____SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

## MORTGAGE

THIS MORTGAGE dated March 5, 2018, is made and executed between Seven and Rose, LLC, a South Carolina limited liability company, as to Unit 200, whose address is 4639 Wilson Road, Meggett, SC 29449 and MICFO, LLC, a Nevada limited liability company, as to Unit 201, whose address is 198 East Bay Street, Unit 201, Charleston, SC 29401 (referred to below as "Grantor") and TBG Funding LLC, a Delaware limited liability company, whose address is c/o The Battery Group, LLC, 3839 Flatlands Avenue, Suite 201, Brooklyn, NY 11234 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages, grants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Charleston County, State of South Carolina:

**Unit 200:**

ALL that certain Apartment lying and being in the City of Charleston, Charleston County, South Carolina, and being known as Suite 200 of the 198 East Bay Horizontal Property Regime and being more particularly shown and described by reference to the Master Deed of 198 East Bay Horizontal Property Regime filed by Kathleen Hyde, establishing said Horizontal Property Regime, said Master Deed being dated the 3rd day of December, 1981, and being recorded in the RMC Office for Charleston County in Deed Book F127, Page 65.

TOGETHER WITH an undivided percentage interest in the common elements and facilities of the properties described in the aforesaid Master Deed attributable to the said apartment.

This being a portion of the same property conveyed to Seven and Rose, LLC, a South Carolina limited liability company, by Deed of Cumberland Bay Properties, a South Carolina partnership, dated March 4, 2016 and recorded March 7, 2016 in Book 639 at Page 176 in the Office of the Register of Deeds for Charleston County, South Carolina.

**Unit 201:**

ALL that certain Apartment lying and being in the City of Charleston, Charleston County, South Carolina, and being known as Suite 201 of the 198 East Bay Horizontal Property Regime and being more particularly shown and described by reference to the Master Deed of 198 East Bay Horizontal Property Regime filed by Kathleen Hyde, establishing said Horizontal Property Regime, said Master Deed being dated the 3rd day of December, 1981, and being recorded in the RMC Office for Charleston County in Deed Book F127, Page 65.

TOGETHER WITH an undivided percentage interest in the common elements and facilities of the properties described in the aforesaid Master Deed attributable to the said apartment.

This being a portion of the same property conveyed to MICFO, LLC, a Nevada limited liability company, by Deed of A.R.D. Company, dated October 14, 2016 and recorded October 15, 2016 in Book 610 at Page 507 in the Office of the Register of Deeds for Charleston County, South Carolina.

The Real Property or its address is commonly known as  198 East Bay Street, Units 200 and 201, Charleston, SC 29401.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

Rec. to:
**Cooperative Title, LLC**
**874 Orleans Road, #4**
**Charleston, SC 29407**

EXHIBIT B

## MORTGAGE
### (Continued)

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by South Carolina law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that

## MORTGAGE
### (Continued)

could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes, with the exception of insurance premiums paid by Lender with respect to motor vehicles, but including the payment of attorneys' fees and expenses, will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

# MORTGAGE
## (Continued)

Page 4

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or

## MORTGAGE
### (Continued)

in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and, as mortgagee-in-possession, collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect

# MORTGAGE
## (Continued)

Page 6

Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees in an amount not less than fifteen percent (15%) of the amount owing on the Indebtedness and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**ASSOCIATION OF UNIT OWNERS.** The following provisions apply if the Real Property has been submitted to unit ownership law or similar law for the establishment of condominiums or cooperative ownership of the Real Property:

**Power of Attorney.** Grantor grants an irrevocable power of attorney to Lender to vote in Lender's discretion on any matter that may come before the association of unit owners. Lender shall have the right to exercise this power of attorney only after Grantor's default; however, Lender may decline to exercise this power as Lender sees fit.

**Insurance.** The insurance as required above may be carried by the association of unit owners on Grantor's behalf, and the proceeds of such insurance may be paid to the association of unit owners for the purpose of repairing or reconstructing the Property. If not so used by the association, such proceeds shall be paid to Lender.

**Default.** Grantor's failure to perform any of the obligations imposed on Grantor by the declaration submitting the Real Property to unit ownership, by the bylaws of the association of unit owners, or by any rules or regulations thereunder, shall be an event of default under this Mortgage. If Grantor's interest in the Real Property is a leasehold interest and such property has been submitted to unit ownership, any failure by Grantor to perform any of the obligations imposed on Grantor by the lease of the Real Property from its owner, any default under such lease which might result in termination of the lease as it pertains to the Real Property, or any failure of Grantor as a member of an association of unit owners to take any reasonable action within Grantor's power to prevent a default under such lease by the association of unit owners or by any member of the association shall be an Event of Default under this Mortgage.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of South Carolina. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. However, if there is ever a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of New York.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Charleston County, State of South Carolina.

**Joint and Several Liability.** All obligations of Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Mortgage. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to

## MORTGAGE
### (Continued)

demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of South Carolina as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Seven and Rosa, LLC, a South Carolina limited liability company; and MICFO, LLC, a Nevada limited liability company and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Seven and Rosa, LLC, a South Carolina limited liability company; and MICFO, LLC, a Nevada limited liability company.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, accrued interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means TBG Funding LLC, a Delaware limited liability company, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender. ~~_TBI_~~ ~~_MM_~~

**Note.** The word "Note" means the promissory note dated March 21, 2018, in the original principal amount of $676,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental

## MORTGAGE
### (Continued)

Page 8

agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.**

**THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**GRANTOR:**

**SEVEN AND ROSE, LLC, A SOUTH CAROLINA LIMITED LIABILITY COMPANY**

By: _____ (Seal)
    Amir Golestan, Manager of Seven and Rose, LLC, a
    South Carolina limited liability company

**MICFO, LLC, A NEVADA LIMITED LIABILITY COMPANY**

By: _____ (Seal)
    Amir Golestan, Manager of MICFO, LLC, a Nevada
    limited liability company

Signed, acknowledged and delivered in the presence of:

X _____
    Witness

X _____
    Witness

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF ___S C___ )
                    ) SS
COUNTY OF ___CHARLESTON___ )

**PERSONALLY** appeared before me and made oath that he or she saw the within-named Grantor(s) sign, seal, and, as his or her act and deed, deliver the within-written Mortgage for the uses and purposes therein mentioned, and that he or she with the other witness subscribed above witnessed the execution thereof.

_____
(Witness)

SWORN to before me this ___7TH___

day of ___MARCH___, A.D. 20 ___18___

_____ (Seal)
    Notary Public

My Commission expires: ___2-3-25___

*[Notary seal: RAYMOND W. SMITH, My Commission Expires, NOTARY PUBLIC, STATE OF SOUTH CAROLINA, 02-03-2025]*

**MORTGAGE**
**(Continued)**

Page 9

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF ____SC____ )
) SS
COUNTY OF ____CHARLESTON____ )

PERSONALLY appeared before me and made oath that he or she saw the within-named Grantor(s) sign, seal, and, as his or her act and deed, deliver the within-written Mortgage for the uses and purposes therein mentioned, and that he or she with the other witness subscribed above witnessed the execution thereof.

SWORN to before me this ____7th____

day of ____August____, A.D. 20 __18__

_____(Seal)
Notary Public

My Commission expires: ____2·3·25____

(Witness)

RAYMOND W. SMITH
My Commission Expires
02.03.2025
NOTARY PUBLIC
STATE OF SOUTH CAROLINA



# RECORDER'S PAGE

**NOTE: This page MUST remain with the original document**
OK - Index both props
per Ray Smith

**Filed By:**
COOPERATIVE TITLE
874 ORLEANS ROAD
SUITE 4
CHARLESTON SC 29407  (COURIER)

**RECORDED**

| | |
|---|---|
| Date: | March 15, 2018 |
| Time: | 3:13:41 PM |

| Book | Page | DocType |
|---|---|---|
| 0704 | 855 | Mtg |

Elaine H. Bozman, Register
Charleston County, SC

**MAKER:**
SEVEN & ROSE LLC AL

**RECIPIENT:**
TBG FUNDING LLC

**Original Book:**

**Original Page:**

| # of Sets: | | # of Pages: | 10 |
|---|---|---|---|
| | | # of References: | |
| Note: | | | |
| | | Recording Fee | $ 10.00 |
| | | Extra Reference Cost | $ - |
| | | Extra Pages | $ 5.00 |
| | | Postage | $ - |
| | | Chattal | $ - |
| | | TOTAL | $ 15.00 |

| DRAWER | Drawer 1 |
|---|---|
| CLERK | KLH |



0704
Book

855
Page

03/15/2018
Recorded Date

10
# Pgs

Original Book

Original Page

M
Doc Type

13:13:41
Recorded Time

843-958-4800    101 MEETING STREET    CHARLESTON, SC 29401    www.charlestoncounty.org



# PGS:
7

BP0704856

**RECORDATION REQUESTED BY:**
TBG Funding LLC, a Delaware limited liability company
c/o The Battery Group, LLC
3939 Flatlands Avenue, Suite 201
Brooklyn, NY 11234

**WHEN RECORDED MAIL TO:**
Attn: Allan J. Weiss, Esq.
Wachtel Missry LLP
885 Second Avenue
New York, NY 10017

**SEND TAX NOTICES TO:**
Seven and Rose, LLC, a South Carolina limited liability company
MICFO, LLC, a Nevada limited liability company
4639 Wilson Road
Meggett, SC 29449

_____ SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

## ASSIGNMENT OF RENTS

THIS ASSIGNMENT OF RENTS dated March 8, 2016, is made and executed between Seven and Rose, LLC, a South Carolina limited liability company, as to Unit 200, whose address is 4639 Wilson Road, Meggett, SC 29449 and MICFO, LLC, a Nevada limited liability company, as to Unit 201, whose address is 188 East Bay Street, Unit 201, Charleston, SC 29401 (referred to below as "Grantor") and TBG Funding LLC, a Delaware limited liability company, whose address is c/o The Battery Group, LLC, 3939 Flatlands Avenue, Suite 201, Brooklyn, NY 11234 (referred to below as "Lender").

**ASSIGNMENT.** For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Charleston County, State of South Carolina:

**Unit 200:**

ALL that certain Apartment lying and being in the City of Charleston, Charleston County, South Carolina, and being
known as Suite 200 of the 188 East Bay Horizontal Property Regime and being more particularly shown and described by reference to the Master Deed of 188 East Bay Horizontal Property Regime filed by Kathleen Hyde, establishing said Horizontal Property Regime, said Master Deed being dated the 3rd day of December, 1981, and
being recorded in the RMC Office for Charleston County in Deed Book F127, Page 65.

**TOGETHER WITH** an undivided percentage interest in the common elements and facilities of the properties described in the aforesaid Master Deed attributable to the said apartment.

This being a portion of the same property conveyed to Seven and Rose, LLC, a South Carolina limited liability company, by Deed of Cumberland Bay Properties, a South Carolina partnership, dated March 4, 2016 and recorded March 7, 2016 in Book 539 at Page 175 in the Office of the Register of Deeds for Charleston County, South Carolina.

**Unit 201:**

ALL that certain Apartment lying and being in the City of Charleston, Charleston County, South Carolina, and being
known as Suite 201 of the 188 East Bay Horizontal Property Regime and being more particularly shown and described by reference to the Master Deed of 188 East Bay Horizontal Property Regime filed by Kathleen Hyde, establishing said Horizontal Property Regime, said Master Deed being dated the 3rd day of December, 1981, and
being recorded in the RMC Office for Charleston County in Deed Book F127, Page 65.

**TOGETHER WITH** an undivided percentage interest in the common elements and facilities of the properties described in the aforesaid Master Deed attributable to the said apartment.

This being a portion of the same property conveyed to MICFO, LLC, a Nevada limited liability company, by Deed of A.R.D. Company, dated October 14, 2015 and recorded October 15, 2015 in Book 510 at Page 807 in the Office of the Register of Deeds for Charleston County, South Carolina.

Rec → Ret → To:

**EXHIBIT C**

**Cooperative Title, LLC**
**874 Orleans Road, #4**
**Charleston, SC 29407**

**ASSIGNMENT OF RENTS**
**(Continued)**

Page 2

The Property or its address is commonly known as **198 East Bay Street, Units 200 and 201, Charleston, SC 29401.**

THIS ASSIGNMENT IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that:

**Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Assign.** Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

**No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

**LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.** Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

**Notice to Tenants.** Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

**Enter the Property.** Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**Maintain the Property.** Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of South Carolina and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes, with the exception of insurance premiums paid by Lender with respect to motor vehicles, but including the payment of attorneys' fees and expenses, will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

# ASSIGNMENT OF RENTS
## (Continued)

Page 3

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default on Other Payments.** Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Assignment or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against the Rents or any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees in an amount not less than fifteen percent (15%) of the amount owing on the Indebtedness and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.** This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

## ASSIGNMENT OF RENTS
### (Continued)

Page 4

**Caption Headings.** Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Assignment will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of South Carolina. In all other respects, this Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of laws provisions. However, if there ever is a question about whether any provision of this Assignment is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Assignment has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of New York.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Charleston County, State of South Carolina.

**Joint and Several Liability.** All obligations of Grantor under this Assignment shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Assignment. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Assignment.

**Merger.** There shall be no merger of the interest or estate created by this assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1) In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2) If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Assignment. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Successors and Assigns.** Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Assignment.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of South Carolina as to all Indebtedness secured by this Assignment.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Assignment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Assignment.** The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.** The word "Borrower" means Seven and Rose, LLC, a South Carolina limited liability company; and MCFO, LLC, a Nevada limited liability company.

**Default.** The word "Default" means the Default set forth in this Assignment in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Assignment in the default section of this

## ASSIGNMENT OF RENTS
### (Continued)

Page 5

**Assignment.**

**Grantor.** The word "Grantor" means Seven and Rose, LLC, a South Carolina limited liability company; and MCFO, LLC, a Nevada limited liability company.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means all principal, earned interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment.

**Lender.** The word "Lender" means TBG Funding LLC, a Delaware limited liability company, its successors and assigns.

**Note.** The word "Note" means the promissory note dated March 5, 2018, in the original principal amount of $675,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS ASSIGNMENT TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON MARCH 5, 2018.

THIS ASSIGNMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS ASSIGNMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

SEVEN AND ROSE, LLC, A SOUTH CAROLINA LIMITED LIABILITY COMPANY

By: _____ (Seal)
Amir Golestan, Manager of Seven and Rose, LLC, a
South Carolina limited liability company

MCFO, LLC, A NEVADA LIMITED LIABILITY COMPANY

By: _____ (Seal)
Amir Golestan, Manager of MCFO, LLC, a Nevada
limited liability company

Signed, acknowledged and delivered in the presence of:

X _____
Witness

X _____
Witness

**ASSIGNMENT OF RENTS**
**(Continued)**

Page 6

---

### LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _____ SC _____ )
                                        ) SS
COUNTY OF _____ CHARLESTON _____ )

PERSONALLY appeared before me and made oath that he or she saw the within-named Grantor(s) sign, seal, and, as his or her act and deed, deliver the within-written Assignment for the uses and purposes therein mentioned, and that he or she with the other witness subscribed above witnessed the execution thereof.

_____ (Witness)

SWORN to before me this _____ 7th _____

day of _____ MARCH _____, A.D. 20 _____ 18 _____

_____ (Seal)
Notary Public

My Commission expires: _____ 2-3-25 _____

*(Notary seal: RAYMOND W. SMITH, NOTARY PUBLIC, STATE OF SOUTH CAROLINA, 02-03-2025)*

---

### LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _____ SC _____ )
                                        ) SS
COUNTY OF _____ CHARLESTON _____ )

PERSONALLY appeared before me and made oath that he or she saw the within-named Grantor(s) sign, seal, and, as his or her act and deed, deliver the within-written Assignment for the uses and purposes therein mentioned, and that he or she with the other witness subscribed above witnessed the execution thereof.

_____ (Witness)

SWORN to before me this _____ 7th _____

day of _____ MARCH _____, A.D. 20 _____ 18 _____

_____ (Seal)
Notary Public

My Commission expires: _____ 2-3-25 _____

*(Notary seal: RAYMOND W. SMITH, NOTARY PUBLIC, STATE OF SOUTH CAROLINA, 02-03-2025)*

---



# RECORDER'S PAGE

**NOTE:** This page MUST remain with the original document
ok - index both props per Roy Smith

**Filed By:**

COOPERATIVE TITLE
874 ORLEANS ROAD
SUITE 4
CHARLESTON SC 29407   (COURIER)

**MAKER:**

SEVEN & ROSE LLC AL

**RECIPIENT:**

TBG FUNDING LLC

**Original Book:**                    **Original Page:**

## RECORDED

| | | |
|---|---|---|
| | Date: | March 15, 2018 |
| | Time: | 3:14:28 PM |
| **Book** | **Page** | **DocType** |
| 0704 | 856 | Asgt/Etc |

Elaine H. Bozman, Register
Charleston County, SC

| | | |
|---|---|---|
| # of Sets: | # of Pages: | 7 |
| | # of References: | |
| Note: | | |
| | Recording Fee | $  10.00 |
| | Extra Reference Cost | $  - |
| | Extra Pages | $  2.00 |
| | Postage | $  - |
| | Chattel | $  - |
| | **TOTAL** | $  12.00 |

| DRAWER | Drawer 1 |
|---|---|
| CLERK | KLH |



| 0704 | 856 | 03/15/2018 | 7 |
|---|---|---|---|
| Book | Page | Recorded Date | 9 Pge |

| | | D | 13:14:28 |
|---|---|---|---|
| Original Book | Original Page | Doc Type | Recorded Time |

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Wachtel Missry LLP
One Dag Hammarskjold Plaza
885 Second Avenue, 47th Floor
New York, NY 10017

Attention: Allan J. Weiss, Esq.

# PGS:
X1803088
6

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1 DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME |||||
|---|---|---|---|---|
| SEVEN AND ROSE, LLC |||||
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 4639 Wilson Road | Meggett | SC | 29449 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| Not Applicable | | LLC | South Carolina | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME |||||
|---|---|---|---|---|
| MICFO, LLC |||||
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 198 East Bay Street, Unit 201 | Charleston | SC | 29401 | USA |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| Not Applicable | | LLC | Nevada | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME |||||
|---|---|---|---|---|
| TBG Funding LLC |||||
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 3839 Flatlands Avenue, Suite 201 | Brooklyn | NY | 11234 | USA |

4. This FINANCING STATEMENT covers the following collateral:

See Exhibit A attached hereto and made a part hereof.

| 5. ALTERNATIVE DESIGNATION (if applicable) | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [optional]   ☐ All Debtors   ☐ Debtor 1   ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

To be filed with the South Carolina Secretary of State's Office

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Rec + Ret. To:
Cooperative Title, LLC
874 Orleans Road, #4
Charleston, SC 29407

EXHIBIT D

# UCC FINANCING STATEMENT ADDENDUM

**FOLLOW INSTRUCTIONS** (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR** (1a or 1b) ON RELATED FINANCING STATEMENT

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | **SEVEN AND ROSE, LLC** |

| | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|---|
| OR | | | |

**10. MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (11a or 11b) - do not abbreviate or combine names

| | 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 11c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| Not Applicable | | | | | ☐ NONE |

**12.** ☐ **ADDITIONAL SECURED PARTY'S** or ☐ **ASSIGNOR S/P'S** **NAME** - insert only one name (12a or 12b)

| | 12a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 12c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**See Exhibit A**

**15.** Additional collateral description:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

EXHIBIT A  page 1

This Exhibit is attached to and a part of the UCC-1 Financing Statement from SEVEN AND ROSE, LLC ("SEVEN") and MICFO, LLC ("MICFO", together with SEVEN, individually and collectively, the "Debtor") to TBG Funding LLC.

      A.    All the land located in the County of Charleston, State of South Carolina and described in Schedule I annexed hereto and made a part hereof (the "Real Property") consisting of those certain properties known as 198 East Bay Street, Units 200 and 201, Charleston, SC 29401.

      B.    All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Real Property (the "Improvements").

TOGETHER with all and singular rights, hereditaments, and appurtenances belonging or in any way incident or appertaining thereto, including, but not limited to:

      C.    All fixtures, machinery, appliances, materials, equipment, furniture and personal property of every nature whatsoever now or hereafter owned by the Debtor and located in or on, or attached to, or used, or intended to be used, in connection with the operation of, or with construction on, the Real Property or the Improvements, including all extensions, additions, improvements, betterments, renewals and replacements to any of the foregoing and all of the right, title and interest of the Debtor in and to any such personal property or fixtures together with the benefit of any deposits or payments now or hereafter made by the Debtor or on its behalf with regard thereto (the "Personal Property").

      D.    All right, title and interest of the Debtor, if any, in and to the land in the bed of the streets or highways abutting the Real Property to the center line thereof; all easements, rights of way, strips and gores of land, streets, ways, sidewalks, curbs, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, remainders, reversions and appurtenances whatsoever, in any way belonging, relating or appertaining to the Real Property or the Improvements, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Debtor (the "Appurtenances").

      E.    All leases, lettings, occupancy agreements and licenses (collectively, the "Leases") of the Real Property and/or the Improvements or any part thereof now or hereafter entered into and all right, title and interest of the Debtor thereunder (including, without limitation, the cash and securities deposited thereunder), the right to receive and collect the rents, issues and profits from the Leases or otherwise from the operation of the adult care business operating within the Real Property (the "Rents") and all the estate, right, title, interest, property, possession, claim and demand whatsoever, at law as well as in equity, of the Debtor of, in and to, and all proceeds of any sales or other dispositions of, the property described in Paragraphs (A), (B), (C) and (D) above and this Paragraph (E).

Exhibit A to UCC-1

Exhibit A, page 2

F.    All proceeds of and any unearned premiums on any insurance policies covering the Improvements or the Personal Property or the Rents including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof.

G.    All awards ("Awards"), heretofore made and hereafter to be made by any municipal, state or federal authorities to the Debtor and all subsequent owners of the property described above in Paragraphs (A) through (E) including any awards for any changes of grade of streets affecting the property described above in Paragraphs (A) through (E) as the result of the exercise of the power of eminent domain (a "Taking").

H.    All the other estate, right, title, interest, use, possession, property, claim and demand whatsoever, contract rights, general intangibles, actions and rights in action, relating to the property described above in Paragraphs (A) through (G) and proceeds, products, replacements, additions, substitutions, renewals and accessions of any of the foregoing.

Exhibit A to CCC-1

*Exhibit A, page 3*

### Schedule I

The Land is described as follows:

**Unit 200:**

ALL that certain Apartment lying and being in the City of Charleston, Charleston County, South Carolina, and being known as Suite 200 of the 198 East Bay Horizontal Property Regime and being more particularly shown and described by reference to the Master Deed of 198 East Bay Horizontal Property Regime filed by Kathleen Hyde, establishing said Horizontal Property Regime, said Master Deed being dated the 3rd day of December, 1981, and being recorded in the RMC Office for Charleston County in Deed Book F127, Page 65.

TOGETHER WITH an undivided percentage interest in the common elements and facilities of the properties described in the aforesaid Master Deed attributable to the said apartment.

This being a portion of the same property conveyed to Seven and Rose, LLC, a South Carolina limited liability company, by Deed of Cumberland Bay Properties, a South Carolina partnership, dated March 4, 2016 and recorded March 7, 2016 in Book 539 at Page 175 in the Office of the Register of Deeds for Charleston County, South Carolina.

Also known as 198 East Bay Street, Unit 200, Charleston, SC 29401.

**Unit 201:**

ALL that certain Apartment lying and being in the City of Charleston, Charleston County, South Carolina, and being known as Suite 201 of the 198 East Bay Horizontal Property Regime and being more particularly shown and described by reference to the Master Deed of 198 East Bay Horizontal Property Regime filed by Kathleen Hyde, establishing said Horizontal Property Regime, said Master Deed being dated the 3rd day of December, 1981, and being recorded in the RMC Office for Charleston County in Deed Book F127, Page 65.

TOGETHER WITH an undivided percentage interest in the common elements and facilities of the properties described in the aforesaid Master Deed attributable to the said apartment.

This being a portion of the same property conveyed to MICFO, LLC, a Nevada limited liability company, by Deed of A.R.D. Company, dated October 14, 2015 and recorded October 15, 2015 in Book 510 at Page 907 in the Office of the Register of Deeds for Charleston County, South Carolina.

Also known as 198 East Bay Street, Unit 201, Charleston, SC 29401.

Exhibit A to UCC-1

# RECORDER'S PAGE

**NOTE:** This page MUST remain with the original document

ok-Dustek bill prep?
for Ray Smith

**Filed By:**
COOPERATIVE TITLE
874 ORLEANS ROAD
SUITE 4
CHARLESTON SC 29407   (COURIER)

**MAKER:**
SEVEN & ROSE LLC AL

**RECIPIENT:**
TBG FUNDING LLC

**Original File Year:**

**Original File Number:**

## RECORDED

| | | |
|---|---|---|
| Date: | March 15, 2018 | |
| Time: | 3:15:39 PM | |
| File Year | File Number | DocType |
| 2018 | 03088 | UCC |

Elaine H. Bozman, Register
Charleston County, SC

| | |
|---|---|
| # of Pages: | 6 |
| # of References: | |

| | | | |
|---|---|---|---|
| Note: | Recording Fee | $ | 12.00 |
| | Extra Reference Cost | $ | - |
| | Extra Pages | $ | - |
| | Postage | $ | - |
| | Chattel | $ | - |
| | TOTAL | $ | 12.00 |

| | |
|---|---|
| DRAWER | Drawer 1 |
| CLERK | KLH |



| 2018 | · 03088 | 03/15/2018 | 6 |
|---|---|---|---|
| File Year | File Number | Recorded Date | # Pgs |

| | | U | 13:15:39 |
|---|---|---|---|
| Original File Year | Original File Number | Doc Type | Recorded Time |

843-958-4800    101 MEETING STREET    CHARLESTON, SC 29401    www.charlestoncounty.org

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO   (Name and Address)

Record & Return to:
Riverside Abstract, LLC
212 Second Street, Suite 502
Lakewood, NJ 08701

SC Secretary of State

File ID: 18019-1138496

Lapse Date: 03/19/2023

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only *one* debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| SEVEN AND ROSE, LLC | | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | | CITY | | STATE | POSTAL CODE | COUNTRY |
| 4639 Wilson Road | | Meggett | | SC | 29449 | USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | | 1g. ORGANIZATIONAL ID #, if any | |
| | ORGANIZATION | | | | | |
| Not Applicable | DEBTOR | LLC | South Carolina | | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only *one* debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| MICFO, LLC | | | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | | STATE | POSTAL CODE | COUNTRY |
| 198 East Bay Street, Unit 201 | | Charleston | | SC | 29401 | USA |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | | 2g. ORGANIZATIONAL ID #, if any | |
| | ORGANIZATION | | | | | |
| Not Applicable | DEBTOR | LLC | Nevada | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only *one* secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| TBG Funding LLC | | | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | | CITY | | STATE | POSTAL CODE | COUNTRY |
| 3839 Flatlands Avenue, Suite 201 | | Brooklyn | | NY | 11234 | USA |

4. This FINANCING STATEMENT covers the following collateral:

See Exhibit A attached hereto and made a part hereof.

| 5. ALTERNATIVE DESIGNATION [if applicable] | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 | |

8. OPTIONAL FILER REFERENCE DATA

To be filed with the South Carolina Secretary of State's Office

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

EXHIBIT E

**UCC FINANCING STATEMENT ADDENDUM**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME

**SEVEN AND ROSE, LLC**

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX

10. MISCELLANEOUS:

SC Secretary of State

File ID: 180319-1128496

Lapse Date: 03/19/2023

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any
Not Applicable | | | | □ NONE

12. □ ADDITIONAL SECURED PARTY'S or □ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

13. This FINANCING STATEMENT covers □ timber to be cut or □ as-extracted collateral, or is filed as a ☑ fixture filing.

16. Additional collateral description:

14. Description of real estate:

**See Exhibit A**

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a □ Trust or □ Trustee acting with respect to property held in trust or □ Decedent's Estate

18. Check only if applicable and check only one box.
□ Debtor is a TRANSMITTING UTILITY
□ Filed in connection with a Manufactured-Home Transaction — effective 30 years
□ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

## EXHIBIT A

This Exhibit is attached to and a part of the UCC-1 Financing Statement from SEVEN AND
ROSE, LLC ("SEVEN") and MICFO, LLC ("MICFO", together with SEVEN, individually and
collectively, the "Debtor") to TBG Funding LLC.

    A.    All the land located in the County of Charleston, State of South Carolina
and described in Schedule I annexed hereto and made a part hereof (the "Real Property")
consisting of those certain properties known as 198 East Bay Street, Units 12(f) and 201,
Charleston, SC 29401.       Lapse Date: 03/19/2023

    B.    All buildings, structures and improvements of every nature whatsoever
now or hereafter situated on the Real Property (the "Improvements").

TOGETHER with all and singular rights, hereditaments, and appurtenances belonging or in any
way incident or appertaining thereto, including, but not limited to:

    C.    All fixtures, machinery, appliances, materials, equipment, furniture and
personal property of every nature whatsoever now or hereafter owned by the Debtor and located
in or on, or attached to, or used, or intended to be used, in connection with the operation of, or
with construction on, the Real Property or the Improvements, including all extensions, additions,
improvements, betterments, renewals and replacements to any of the foregoing and all of the
right, title and interest of the Debtor in and to any such personal property or fixtures together
with the benefit of any deposits or payments now or hereafter made by the Debtor or on its
behalf with regard thereto (the "Personal Property").

    D.    All right, title and interest of the Debtor, if any, in and to the land in the
bed of the streets or highways abutting the Real Property to the center line thereof; all easements,
rights of way, strips and gores of land, streets, ways, sidewalks, curbs, alleys, passages, sewer
rights, waters, water courses, water rights and powers, and all estates, rights, titles, interests,
privileges, liberties, tenements, hereditaments, remainders, reversions and appurtenances
whatsoever, in any way belonging, relating or appertaining to the Real Property or the
Improvements, or which hereafter shall in any way belong, relate or be appurtenant thereto,
whether now owned or hereafter acquired by the Debtor (the "Appurtenances").

    E.    All leases, lettings, occupancy agreements and licenses (collectively, the
"Leases") of the Real Property and/or the Improvements or any part thereof now or hereafter
entered into and all right, title and interest of the Debtor thereunder (including, without
limitation, the cash and securities deposited thereunder), the right to receive and collect the rents,
issues and profits from the Leases or otherwise from the operation of the adult care business
operating within the Real Property (the "Rents") and all the estate, right, title, interest, property,
possession, claim and demand whatsoever, at law as well as in equity, of the Debtor of, in and to,
and all proceeds of any sales or other dispositions of, the property described in Paragraphs (A),
(B), (C) and (D) above and this Paragraph (E).

F.    All proceeds of and any unearned premiums on any insurance policies covering the Improvements or the Personal Property or the Rents including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof.

G.    All awards ("Awards"), heretofore made and hereafter to be made by any municipal, state or federal authorities to the Debtor and all subsequent owners of the property described above in Paragraphs (A) through (E) including any awards for any changes of grade of streets affecting the property described above in Paragraphs (A) through (E) as the result of the exercise of the power of eminent domain (a "Taking").    Lapse Date: 03/19/2023

H.    All the other estate, right, title, interest, use, possession, property, claim and demand whatsoever, contract rights, general intangibles, actions and rights in action, relating to the property described above in Paragraphs (A) through (G) and proceeds, products, replacements, additions, substitutions, renewals and accessions of any of the foregoing.

Exhibit A to UCC-1

**Schedule I**

The Land is described as follows:

**Unit 200:**

ALL that certain Apartment lying and being in the City of Charleston, Charleston County, South Carolina, and being known as Suite 200 of the 198 East Bay Horizontal Property Regime and being more particularly shown and described by reference to the Master Deed of 198 East Bay Horizontal Property Regime filed by Kathleen Hyde, establishing said Horizontal Property Regime, said Master Deed being dated the 3rd day of December, 1981, and being recorded in the RMC Office for Charleston County in Deed Book F127, Page 65.

TOGETHER WITH an undivided percentage interest in the common elements and facilities of the properties described in the aforesaid Master Deed attributable to the said apartment.

This being a portion of the same property conveyed to Seven and Rose, LLC, a South Carolina limited liability company, by Deed of Cumberland Bay Properties, a South Carolina partnership, dated March 4, 2016 and recorded March 7, 2016 in Book 539 at Page 175 in the Office of the Register of Deeds for Charleston County, South Carolina.

Also known as 198 East Bay Street, Unit 200, Charleston, SC 29401.


**Unit 201:**

ALL that certain Apartment lying and being in the City of Charleston, Charleston County, South Carolina, and being known as Suite 201 of the 198 East Bay Horizontal Property Regime and being more particularly shown and described by reference to the Master Deed of 198 East Bay Horizontal Property Regime filed by Kathleen Hyde, establishing said Horizontal Property Regime, said Master Deed being dated the 3rd day of December, 1981, and being recorded in the RMC Office for Charleston County in Deed Book F127, Page 65.

TOGETHER WITH an undivided percentage interest in the common elements and facilities of the properties described in the aforesaid Master Deed attributable to the said apartment.

This being a portion of the same property conveyed to MICFO, LLC, a Nevada limited liability company, by Deed of A.R.D. Company, dated October 14, 2015 and recorded October 15, 2015 in Book 510 at Page 907 in the Office of the Register of Deeds for Charleston County, South Carolina.

Also known as 198 East Bay Street, Unit 201, Charleston, SC 29401.

Exhibit A to UCC-1

# GUARANTY

Lender:        TBG Funding LLC
               c/o the Battery Group, LLC
               3839 Flatlands Avenue
               Suite 201
               Brooklyn, NY 11234

Borrower:      SEVEN AND ROSE, LLC
               4639 Wilson Road
               Meggett, SC 29449
               Attention: Amir Golestan

               MICFO, LLC
               198 East Bay Street, Unit 201
               Charleston, SC 29401
               Attention: Amir Golestan

Guarantor:     Amir Golestan
               4639 Wilson Road
               Meggett, SC 29449

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

"Affiliate" shall mean any Person that directly or indirectly controls, is controlled by or is under common control with such Person. For the purposes of this definition, "control" when used with respect to any Person means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Borrower" means SEVEN AND ROSE, LLC, a South Carolina limited liability company and MICFO, LLC, a Nevada limited liability company, and includes all co-signers and co-makers signing the Note and all their successors and assigns.

"GAAP" means generally accepted accounting principles.

"Guarantor" means, individually and collectively, everyone signing this Guaranty, including, without limitation, Amir Golestan, and any signer's successors and assigns.

"Guaranty" means this guaranty from Guarantor to Lender.

"Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

Commercial Guaranty  1

**EXHIBIT F**

"Lender" means TBG Funding, LLC, a Delaware limited liability company, its successors and assigns.

"Note" means and includes, that certain Promissory Note, in the original principal amount of SIX HUNDRED SEVENTY FIVE THOUSAND AND 00/100 ($675,000.00) DOLLARS, of even date herewith, made by Borrower for the benefit of Lender, and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements, including, without limitation, the Note.

"Person" shall mean any individual, corporation, governmental authority, limited liability company, partnership, trust, firm, limited liability partnership, limited partnership, unincorporated association or other entity.

"Related Documents" means all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GUARANTEE OF PAYMENT AND PERFORMANCE. For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing. IF THIS GUARANTY IS SIGNED BY MORE THAN ONE PERSON OR ENTITY, THE OBLIGATIONS HEREUNDER SHALL BE JOINT AND SEVERAL WITH RESPECT TO ALL SIGNATORIES TO THIS GUARANTY.

INDEBTEDNESS. The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, fees, charges, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several; evidenced by a negotiable or non-negotiable instrument or writing; originated

by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated. In addition to, and not by way of limitation of the foregoing, the term "Indebtedness" includes all amounts owing under the Note. If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY. THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.**

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Thus, Guaranty may not be revoked by any Guarantor for any reason whatsoever. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. Any attempted revocation Lender receives from any one or more Guarantor, or any release thereof, shall not affect the liability of any remaining Guarantor under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with anyone or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply

such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and, (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein, with the exception of mortgages placed on the primary home of the Guarantor; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true, and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

Guarantor represents and warrants that all financial statements heretofore delivered by them to the Lender, if any, (i) are true, correct and complete in all material respects, fairly represent Guarantor's financial condition as of the date thereof, and no material adverse change has occurred in Guarantor's financial condition reflected therein since the dates thereof, and (ii) no information has been omitted which would make the information previously furnished in such reports and financial statements misleading or incorrect in any material respect. Guarantor agrees that they shall promptly notify the Lender in writing of the occurrence of any material adverse change in their financial condition.

Guarantor represents and warrants that Guarantor has good and marketable title to all of his properties and assets listed in the most recent financial statements delivered to the Lender on or prior to the date hereof (except as otherwise expressly described in said financial statements, and except those properties and assets disposed of since the date of said financial statements in the ordinary course of business).

**GUARANTOR'S FINANCIAL STATEMENTS.** Each Guarantor agrees to furnish Lender with the following, within thirty (30) days after Lender's request thereof:

Annual Statements: Financial statements of the Guarantor for the preceding year, together with bank statements confirming liquidity stated therein.

Commercial Guaranty 4

**Tax Returns.** Federal, State and other governmental tax returns for the most recent calendar year, prepared by a certified public accountant satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public

Continental Guaranty 5

policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.**   Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor or on behalf of itself and its Affiliates may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor (or any Affiliate thereof) hereby expressly subordinates any claim Guarantor or such Affiliate may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor or such Affiliate shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.**   The following miscellaneous provisions are a part of this Guaranty:

**Amendments.**   This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.**   Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**   Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.**   This Guaranty will be governed by the laws of the State of New York without regard to its conflicts of law provisions.

**Choice of Venue.**   If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Charleston County, State of South Carolina or Kings County, State of New York.

**Integration.**  Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.**  In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and anyone or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If anyone or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.**  Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally-recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.**  Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.

This Guaranty is effective as of the 8ᵗʰ day of March, 2018.

GUARANTOR:

Amir Golestan

STATE OF SOUTH CAROLINA        )
                              ) ss.:
COUNTY OF _____     )

On the ___ day of March in the year 2018 before me, the undersigned, personally appeared Amir Golestan, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Commercial Guaranty    8