## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 19-05657-jw |
| Amir Golestan, | Chapter 11 |
| Debtor. | |

### KRISTIN M. GOLESTAN'S OBJECTION TO DEBTOR'S MOTION FOR RELIEF FROM AUTOMATIC STAY & REPLY TO DEBTOR'S OBJECTION TO KRISTIN M. GOLESTAN'S MOTION FOR RELIEF FROM AUTOMATIC STAY

The undersigned, on behalf of Kristin M. Golestan ("Mrs. Golestan"), hereby objects (the "Objection") to the Motion for Emergency Relief from Automatic Stay to Continue Action in Family Court [Docket No. 72] filed by Amir Golestan (the "Debtor") and replies (the "Reply") to Debtor's Objection to Mrs. Golestan's Motion for Relief form Automatic Stay. In support of her Objection and Reply, Mrs. Golestan states the following:

### JURISDICTION

1.      This Court has subject matter jurisdiction over these matters pursuant to 28 U.S.C. §1334 and 28 U.S.C. §§157(b)(2)(A) and (G).   These matters are core proceedings pursuant to 28 U.S.C. §157(b)(2)(A).

### STATEMENT OF FACTS

2.      The Debtor filed his bankruptcy petition at 4:19 p.m. on October 28, 2019 (the "Petition Date").  This bankruptcy was filed, *inter alia*, to avoid incarceration for the Debtor's failure to purge himself of contempt of a prior Family Court order.

3.      The Debtor filed his required schedules and statements (the "Bankruptcy Schedules") in this matter on November 11, 2019, the last day allowed by F. R. Bankr. P. 1007(c).  These schedules were inaccurate and incomplete and remain so today.

4.      Three days later, on November 14, 2019, the Debtor's initial bankruptcy counsel Kevin Campbell filed a motion to withdraw as Debtor's attorney of record stating that the Debtor had fired him. Mrs. Golestan filed a Limited Objection to the withdrawal of counsel motion, seeking completion and correction of the Bankruptcy Schedules and seeking to avoid further delay by the Debtor.  As a result of a hearing on December 13, 2019, the Court granted Mr. Campbell's withdrawal as counsel of record.

5.    Approximately two (2) weeks after Debtor's initial counsel sought to withdraw, Debtor retained a second set of lawyers.  On November 29, 2019, Beal, LLC appeared and filed an application to be employed as substitute counsel for the Debtor.  On December 2, 2019, the Debtor appeared with his proposed new counsel at the Meeting of Creditors, but he provided inadequate information such that the Office of the United States Trustee (the "UST") initially continued the Meeting of Creditors until December 27, 2019, which was subsequently continued until January 24, 2020 at the Debtor's request.

6.    On the afternoon of December 9, 2019, after the Debtor failed to appear for a Rule 2004 Examination and produce subpoenaed documents, Beal, LLC withdrew their pending employment motion due to the Debtor's "Failure to Cooperate and Inability to Communicate." As a result of a hearing on December 13, 2019, the Court approved Beal, LLC's withdrawal of its employment application.

7.    At this time, the Debtor is acting *pro se* in this matter.

8.    On December 13, 2019, the undersigned counsel filed Kristin M. Golestan's Motion for Relief from Automatic Stay ("Mrs. Golestan's 362 Motion") seeking relief from stay pursuant to 11 U.S.C. §362(b)(2) and for "cause" pursuant to 11 U.S.C. §362(d)(1) in order to pursue certain enumerated Family Court matters against the Debtor in order to complete Family Court discovery, to amend the Family Court complaint to add third parties, for the enforcement of post-petition domestic support obligations, to proceed to final divorce and child custody orders, and to have the Family Court determine division of marital assets and liabilities for enforcement by this Court in accordance with the Bankruptcy Code.

9.    On December 26, 2019 the Debtor filed his Motion for Emergency Relief from Automatic Stay to Continue Action in Family Court (the "Debtor's 362 Motion") seeking a "comfort order" allowing Debtor to return to Family Court: (a) for the modification of an order for domestic support obligations; (b) concerning child custody and visitation; and (c) to pursue dissolution of marriage.

10.    On or about December 27, 2019, the Debtor filed his Objection (the "Debtor's 362 Objection") to Mrs. Golestan's 362 Motion arguing that such motion should be denied.

### Criminal Fraud Indictment

11.     Pre-petition, in May 2019, the Debtor was indicted for multiple counts of wire fraud in an action before the United States District Court for the District of South Carolina. The Debtor's alleged fraud includes obtaining hundreds of thousands of Internet Protocol Addresses ("IP Addresses") from the American Registry for Internet Numbers ("ARIN") through fraud by creating false owner and officer identities and websites for Channel Partner companies of Micfo, LLC. After obtaining the IP Addresses, the Debtor would cause the Channel Partner companies to sell the fraudulently obtained IP Addresses for profit. In his bankruptcy schedules, the Debtor asserts ownership of Micfo, LLC and the Channel Partners.

### Family Court Orders

12.     On February 20, 2019, some eight (8) months prior to the filing of this bankruptcy, the Family Court for the Ninth Judicial Circuit in Charleston County, South Carolina entered a *Pendente Lite* Order in the Family Court proceedings initiated by Mrs. Golestan against the Debtor. The *Pendente Lite* Order contains provisions for the temporary joint custody of the parties' minor children, for Debtor's continuing payments of certain family property, life, and health insurances, utilities, and taxes related to the Tradd Street property and vehicle used by Mrs. Golestan, for Debtor's monthly payment of a $25,000 Domestic Support Obligation to Mrs Golestan, the appointment of, and payment of $3,000 to a consensually appointed Guardian *ad Litem* and, as an additional Domestic Support Obligation, the payment of $295,000 toward Mrs. Golestan's attorney and accounting fees (collectively, the "DSO"). The DSO were for large amounts, such as the monthly payments and for Mrs. Golestan's professionals, medium amounts, such as mortgage payments on the home where Mrs. Golestan resides with the two minor children and payment of medical and health insurance premiums, and small amounts, such as utility bills for the residence.

13.     The Debtor failed to comply with the payments required in the Family Court's *Pendente Lite* Order. On August 28, 2019, a hearing was held before the Family Court. On October 4, 2019, the Family Court entered a Contempt Order, finding Debtor paid $768,000 to many others between the date of *Pendente Lite* Order and the hearing on contempt instead of paying the Domestic Support Obligations. The Family Court found the Debtor in contempt and required Debtor's confinement in the Charleston County Detention Center if he failed to purge his contempt by paying court ordered payments aggregating $299,500 within sixty days of

August 28, 2019.  The Debtor failed to purge his contempt, and the matter was set for a hearing at 9:30 a.m. on October 29, 2019, the morning immediately following the Petition Date, the result of which would have been issuance of bench warrant for Debtor's arrest and confinement. On information and belief, the only action in Family Court that would need to be undertaken for the issuance of a bench warrant would be a hearing either upon dismissal of the Debtor's bankruptcy case or the filing of an affidavit in Family Court by Mrs. Golestan's counsel upon lifting of the automatic stay by this Court.

14.     In May 2019, the Family Court entered an Order on Guardian's Motion for Expedited Relief.  This Order suspended Debtor's visitation with the parties' minor children until he completed a therapeutic process, restrained the Debtor's visual and audio recordings of the minor children, required the Debtor to provide all previous recordings to the court appointed Guardian Ad Litem (the "GAL"), and awarding Mrs. Golestan an additional $7,405.50 toward her attorney fees.

15.     The Family Court also entered an Order signed on October 18, 2019 on Mrs. Golestan's Motion to Quash Debtor's Subpoenas and for Protective Order (the "Protective/Quash Order"), which was heard by the Family Court on August 30, 2019, which Protective/Quash Order appears to have been filed on the Court's docket at 5:12 p.m. on the Petition Date. The Protective/Quash Order noted the Debtor's continued failure to comply with the *Pendente Lite* Order and prohibited the Debtor conducting further discovery by Defendant until he complied.  The Protective/Quash Order further required the Debtor to pay an additional $225,000 as an advance on Mrs. Golestan's future attorney fees.

16.     Post-petition, on November 7, 2019, the GAL filed a letter, Motion for Restraining Order, and Affidavit seeking restraining orders against Debtor due to threatening e-mail communications, which included allegations of Debtor threatening the GAL's family, hacking the GAL's servers, and having firearms in violation of a Federal Court Bond relating to his indictment charges.  On December 9, 2019 the Family Court entered a consent order acknowledging the Debtor engaged in the conduct alleged in the GAL's motion and signed by the GAL's attorney and Debtor's Special Counsel appointed by this Court.

17.     On December 12, 2019, in response to an emergency motion filed by the GAL relating to fears over Debtor's recent conduct and state of mind, the Family Court entered an

Order limiting the Debtor's visitation with the parties' children to visits supervised by a professional pending further hearing.

### The Debtor's Post-Petition Conduct and Failures

18.    The Debtor's dismissal of two different sets of bankruptcy lawyers and his failures to cooperate and communicate with either, have conveniently delayed the bankruptcy proceedings to date.

19.    The Debtor is now acting in a *pro se* capacity in a continuing effort to further confuse and delay these proceedings.

20.    The Debtor's schedules remain inaccurate and incomplete, and the Debtor has failed to timely file his 2015.3 reports regarding valuation of his entities.

21.    The Debtor has failed to timely file his and his entities' income tax returns for multiple years, including 2018.

22.    The Debtor has delayed completion of his Meeting of Creditors by continuing that meeting until January 24, 2020, almost 90 days after the Petition Date.

23.    In addition to the pre-petition failures for which the Debtor was held in contempt and precipitated the Debtor's bankruptcy filing, the Debtor continues to disregard the domestic support obligations by failing to make the post-petition payments.

24.    Post-petition, the Debtor has not complied with the Family Court ordered domestic support obligation to pay $25,000 in monthly child/spousal support payment.

25.    Post-petition, the Debtor has not complied with the Family Court ordered domestic support obligation to make the payments on the Tradd Street property occupied by Mrs. Golestan and the parties' minor children.

26.    Post-petition, the Debtor has not complied with the Family Court ordered domestic support obligation to pay utilities for the house occupied by Mrs. Golestan and the minor children causing the power company to threaten to cut off the power absent Mrs. Golestan's immediate payment of the bill.

27.    Post-petition, the Debtor has not complied with the Family Court ordered domestic support obligation to make the payments on the automobile Mrs. Golestan drives and has allowed the automobile insurance to lapse.

28.     Post-petition, the Debtor has not complied with the Family Court ordered domestic support obligation to keep up all medical, dental, and other health policies causing the family health insurance coverage to lapse post-petition.

29.     The Debtor has further failed, and continues his failures, to comply with this Court's orders regarding a Rule 2004 examination and related Subpoena, having failed to produce the documents requested and refused to appear at the December 9 Rule 2004 examination.[1]   These failures and delays by the Debtor are a transparent attempt to hinder and deprive Mrs. Golestan's counsel of the information necessary to properly advise Mrs. Golestan of her best approach in this bankruptcy case.

## OBJECTION TO DEBTOR'S 362 MOTION

The Debtor's 362 Motion[2] seeks a "comfort order" granting the Debtor relief from stay to return to Family Court: (a) for the modification of an order for domestic support obligations; (b)concerning child custody and visitation; and (c) to pursue dissolution of marriage.   The Debtor correctly asserts that each stated ground for relief is an enumerated exception to the automatic stay pursuant to 11 U.S.C. §§ 362(b)(2)(A)(ii), (iii), and (iv).   However, the Debtor's 362 Motion should be denied because the Debtor comes to this Court seeking relief with "unclean hands."   "The doctrine of unclean hands is based on the equitable maxim which states, "'[w]hoever comes into equity must come with clean hands.'" *In re Lafferty*, 469 B.R. 235, 245

---

[1] This Court's December 16, 2019 Order: (1) Compelling Debtor to Produce Documents and Appear at a Rescheduled 2004 Examination; and (2) Finding the Debtor Failed to Comply with the Court's Order [Docket No. 61] (the "Dec. 16 Order") found that the Debtor purposely disregarded this Court's 2004 Examination Order and a Subpoena from Mrs. Golestan's counsel.  The Dec. 16 Order also compelled the Debtor to produce requested documents by 5:00 p.m. on December 17, 2019 and to attend a 2004 Examination on December 19, 2019.  The Debtor failed to comply with the Dec. 16 Order timeline for producing documents and refused to produce most of the documents requested, instead alleging some did not exist (i.e., most of the tax returns), that he had no duty to pull or request documents that he did not have "readily available," and alleging a Fifth Amendment right against self-incrimination to the production of bank statements requested for numerous companies in which the Debtor's schedules show he has a sole or controlling interest.  Though the Debtor appeared for the examination on December 19, he spent the majority of the day asserting his alleged Fifth Amendment rights document-by-document and account-by-account rather than providing a privilege log.  The Debtor admitted such a privilege log existed but he failed to provide it to Mrs. Golestan's counsel.  Because of the foregoing, counsel had to continue the examination to a not-yet-determined date.  Mrs. Golestan's counsel is separately working on a second motion to compel related to the documents the Debtor refused to produce prior to scheduling a continued examination date.

[2] The Debtor's 362 Motion makes a number of false and misleading statements regarding Mrs. Golestan's undersigned counsel.  Such assertions appear to be irrelevant and an attempt to deflect attention away from the Debtor's pre-petition and post-petition misconduct.  Unless the Court wishes to hear more from the undersigned at the hearing in this matter, counsel will refrain from engaging with the Debtor on such allegations.

(Bankr. D.S.C. 2012) (denying asserted homestead exemptions for debtor's that came to the Court with "unclean hands").  "The Bankruptcy Court is unquestionably a court of equity.  The familiar maxim that he who comes to equity must come with clean hands means that a litigant cannot call upon a court of equity to grant him . . . relief if he himself has been guilty of . . . inequitable or unconscionable conduct."  *In re Jake's on the Pike*, 78 B.R. 461, 263 (Bankr. E.D.Va. 1987).

The Debtor's conduct both pre-petition and post-petition evidences a pattern of ignoring both Family Court and Bankruptcy Court orders, a general pattern of delay and refusal to pay court ordered domestic support obligations, and continuing failures to comply with his required duties under the Bankruptcy Code.  The relief sought by the Debtor asks this Court to allow him the benefits associated with a bankruptcy without accepting the burdens requiring him to fulfill obligations under the Bankruptcy Code. When taken together, the Debtor's 362 Motion and Debtor's 362 Objection seek to allow the Debtor to go back to Family Court for modification of his domestic support obligations while prohibiting Mrs. Golestan from enforcing those obligations already determined.  The relief sought by the Debtor amounts to a request that this Court aid his continuing misconduct in the Courts and his hindrance and delay of Mrs. Golestan's efforts to obtain the relief to which she is entitled under the law.

For these reasons, Mrs. Golestan asks that this Court find that the Debtor comes before this Court of equity seeking relief with "unclean hands" and deny the Debtor's 362 Motion.

## REPLY TO DEBTOR'S OBJECTION TO MRS. GOLESTAN'S 362 MOTION

First, the Debtor's 362 Objection "alternatively . . . seeks adjournment of [Mrs. Golestan's 362] Motion for sixty (60) days."  *Debtor's 362 Objection*, at *1 (opening paragraph). Then, the Debtor's 362 Objection argues that Mrs. Golestan's 362 Motion be denied.  *Debtor's 362 Objection*, at *4 (under "Argument").  Next, the Debtor's 362 Objection argues that Mrs. Golestan cannot meet her burden to show "cause" for stay relief and seemingly suggests the Bankruptcy Court would be the best forum for deciding the Family Court issues.  *Debtor's 362 Objection*, at *6-9.  Finally, the Debtor seems to request that the Court limit the stay relief granted to Mrs. Golestan to only those items enumerated in 11 U.S.C. §§ 362(b)(2)(A)(ii), (iii), and (iv) -- "(ii) for the establishment or modification of an order for domestic support obligations; (iii) concerning child custody or visitation; (iv) for the dissolution of marriage

except to the extent such proceeding seeks to determine the division of property that is property of the estate." *Debtor's 362 Objection*, at *10 (Conclusion).[3]  Mrs. Golestan replies to the Debtor's 362 Objection as follows.

<u>Much of the Relief Sought falls under Enumerated Exceptions to the Stay</u>

Significant parts of the relief Mrs. Golestan seeks from this Court are exceptions to the automatic stay.  Mrs. Golestan seeks an order authorizing her to continue her Family Court actions under items enumerated in 11 U.S.C. §§ 362(b)(2)(A), including sections "(ii) for the establishment or modification of an order for domestic support obligations; (iii) concerning child custody or visitation; (iv) for the dissolution of marriage except to the extent such proceeding seeks to determine the division of property that is property of the estate."  Mrs. Golestan also seeks authority pursuant to the stay exceptions enumerated under 11 U.S.C. §§ 362(b)(2)(B), (C), (D), and (F) for the collection of domestic support obligations from property that is not property of the estate, including property of corporations not in bankruptcy, as well as from estate property through state court ordered withholding of income, suspension of licenses, and withholding of tax refunds.  All of these items are exceptions to the automatic stay, on which Mrs. Golestan is statutorily authorized to move forward.  However, Mrs. Golestan seeks entry of an order authorizing the Family Court to proceed on such matter so that she may proceed in the Family Court without further delay.

<u>Additional Relief Sought</u>

For "cause" pursuant to 11 U.S.C. §362(d)(1), Mrs. Golestan further seeks modification of the automatic stay to allow the Family Court to enforce post-petition domestic support obligations and to allow the Family Court to use its contempt powers if necessary in order to enforce its post-petition orders because of the Debtor's history of failures to comply with court orders.  Mrs. Golestan also further seeks authority for the Family Court to determine division of marital assets and liabilities, but, as stated in Mrs. Golestan's 362 Motion, she will only seek enforcement of any such orders in the Bankruptcy Court pursuant to the provisions of the Bankruptcy Code.

---

[3] Similar to the Debtor's 362 Motion, the Debtor's 362 Objection also makes a number of inaccurate statements regarding improper actions of Mrs. Golestan's counsel and even of the Family Court judges.  However, such assertions appear baseless.  Once again, this appears to be an attempt to deflect attention away from the Debtor's pre-petition and post-petition misconduct.  Unless the Court wishes to hear more from the undersigned at the hearing in this matter, counsel will again refrain from engaging with the Debtor on such allegations.

As part of Mrs. Golestan's 362 Motion, she provides a list of some specific items she wishes to pursue, which include: (i) a motion (filed August 15, 2019) for enforcement of domestic support obligations through the state Disbursement Unit; (ii) a motion to amend the divorce complaint (filed August 26, 2019) to add third parties, and the amended motion to add third parties (filed September 17, 2019); (iii) a motion for supplemental temporary relief (filed on September 30, 2019); (iv) a motion to compel subpoena production (filed August 21, 2019) against the Debtor's sister; (v) a Rule to Show Cause (filed on August 7, 2019); (vi) a motion to be filed requiring the Debtor to immediately reinstate the medical and health insurances for Movant and the minor children and to pay all Tradd Street utilities as previously required; and (vii) to provide for subpoenas, discovery, and any necessary related motions in order to obtain records associated with the Debtor's payments to attorneys.   From this list, the Debtor only objects to pursuit of the September 30, 2019 Motion for Supplemental Temporary Relief.

The September 30 Motion for Supplemental Temporary Relief

The September 30, 2019 Motion for Supplemental Temporary Relief is a pre-petition motion by Plaintiff to take possession of and/or title to certain marital assets, including the real estate holdings of Debtor and his companies as well as the parties' London furniture, for the purpose of selling such properties to pay the associated debts and then to pay the outstanding amounts owed by Debtor to Mrs. Golestan.   The Debtor objects to Mrs. Golestan pursuing this Motion.   Given that this motion deals with establishment of property rights, potential transfer of possession/title, and sale of estate assets, this is a motion that, if granted by the family court, would necessitate coming before the Bankruptcy Court for enforcement, as anticipated by Mrs. Golestan's 362 Motion.   Mrs. Golestan agrees with the Debtor's statements in paragraph 7 of the Debtor' 362 Objection that he should be devoted to the immediate task of liquidating his assets, and Mrs. Golestan's intent with this Motion is to ensure that such sales are promptly and properly pursued.[4]   Mrs. Golestan hopes to establish her marital interests in the properties and establish the immediate need to sell such properties via the Family Court, and armed with such Family Court findings to then ask this Court to require and oversee the sale of such items.   There is no intent by Mrs. Golestan to take or sell properties outside of the Bankruptcy Court or without Bankruptcy Court approval.

---

[4] Though the Debtor acknowledges his need to sell these assets, we are more than two months into this bankruptcy proceeding and the Debtor has not sought Court approval to employ any marketing/sales agents.

<u>§362(d)(1) "Cause" Exists for Stay Relief</u>

Despite the Debtor's assertions and arguments to the contrary, "cause" does exist for the relief Mrs. Golestan seeks. "A decision to lift the automatic stay [for cause] under section 362 of the Code is within the discretion of the bankruptcy judge and this decision may be overturned on appeal only for abuse of discretion." *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992).

> When determining whether to grant relief from the stay to allow a state court to decide a domestic matter, this Court must 'balance the potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied. The factors to consider under this balancing test are: (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy court; and (3) whether the estate can be protected properly by a requirement that the creditor seek enforcement of any judgment through the bankruptcy court.

*In re Katzburg,* 326 B.R. 606, 610 (Bankr.D.S.C. 2004) (citing *Robbins,* 964 F2d at 345). Here, we are balancing potential prejudice to an individual debtor's estate with less than $1 million in scheduled secured debts and scheduled assets exceeding at least $6.3 million against the welfare and living expenses of a mother and the parties' minor children who hold a §507(a)(1) first priority claim that is not being paid. "The intent of Congress that bankruptcy debtors not be able to avoid responsibility for paying in full the 'domestic support obligations' for which they are responsible is unmistakable." *In re Fort*, 412 B.R. 840, 854-855 (Bankr. W.D.Va. 2009). In fact, failure to pay post-petition domestic support obligations are an enumerated cause for dismissal under 11 U.S.C. §1112(b)(4)(P), and all post-petition domestic support obligations must be paid before a debtor can confirm a plan pursuant to 11 U.S.C. §1129(a)(14). Additionally, domestic support obligations are given the highest priority pursuant to 11 U.S.C. §507(a)(1) and are non-dischargeable pursuant to 11 U.S.C. §523(a)(5).

The factors espoused in *Robbins* and adopted by this Court in *Katzburg* weigh heavily in favor of modifying the stay to allow Mrs. Golestan to continue litigating the divorce proceedings in Family Court as set forth in Mrs. Golestan's 362 Motion: (a) the issues involved are matters concerning South Carolina family law; (b) judicial economy would be best served as the Family Court and the attorneys representing Mrs. Golestan and the Debtor in the related proceedings are

very familiar with the underlying facts of this much-litigated matter; and (c) Mrs. Golestan and her divorce counsel are aware that enforcement of any judgment that may impact division of property of the estate requires approval by this Court.

> Furthermore, "[t]he Fourth Circuit specifically adheres to the principle that generally, bankruptcy courts owe state courts deference in domestic matters." *Roberge v. Buis,* No. 95–3133, 1996 WL 482686, at *2 (4th Cir. Aug.27, 1996). *See also In re Dole,* No. 96–77677–W, 1997 WL 33344284, *1 (Bankr.D.S.C. Feb.20, 1997)("This Court recognizes the long standing principle that, absent unusual factors, federal law favors state retention of control of domestic matters. Generally, bankruptcy courts owe state court deference in domestic matters.")(internal citations omitted).

In re Katzburg, 326 B.R. 606, 610 (Bankr. D.S.C. 2004).


For the foregoing reasons and those stated in Mrs. Golestan's 362 Motion, Mrs. Golestan's 362 Motion should be granted.


RESPECTFULLY SUBMITTED on this the 6th day of January 2020, at Columbia, South Carolina.

McCARTHY REYNOLDS & PENN, LLC

By:  /s/ Daniel J. Reynolds, Jr.
     G. William McCarthy, Jr., Dist. I.D. # 2762
     Daniel J. Reynolds, Jr., Dist. I.D. # 9232
     *Attorneys for Kristin M. Golestan*
     1517 Laurel St. (29201)
     PO Box 11332
     Columbia, SC 29211-1332
     Tel: (803) 771-8836
     dreynolds@mccarthy-lawfirm.com