## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 19-05657-JW |
| | Chapter 11 |
| Amir Golastan Parast a/k/a Amir Golestan, | |
| Debtor(s). | **ORDER ON MOTIONS FOR RELIEF FROM STAY** |

The matters addressed herein come before the Court upon Kristin M. Golestan's Motion for Relief from Automatic Stay ("Mrs. Golestan's 362 Motion") and Amir Golastan Parast's Motion for Emergency Relief from Automatic Stay to Continue Action in Family Court ("Debtor's 362 Motion").[1] Both Amir Golastan Parast a/k/a Amir Golestan ("Debtor") and Kristin M. Golestan ("Mrs. Golestan") filed objections to the other party's motion,[2] and a hearing was held on the Motions. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014(c).[3]

### FINDINGS OF FACT

1.     On September 20, 2012, Debtor and Mrs. Golestan were married.

2.     On December 13, 2018, a divorce proceeding was commenced in the Family Court for the Ninth Judicial Circuit in South Carolina ("Family Court"), and on February 20, 2019, the Family Court entered a *Pendente Lite* Order. The *Pendente Lite* Order provides the following relevant provisions under a section entitled "CHILD SUPPORT/ALIMONY AND/OR SEPARATE MAINTENANCE AND SUPPORT:"

---

[1]     The Court refers to both Mrs. Golestan's 362 Motion and Debtor's 362 Motion collectively as the "Motions."

[2]     While the Motions were under advisement, Debtor filed amended schedules and statements, which changed his name of record from Amir Golestan to Amir Golastan Parast to match the name listed on his passport.

[3]     To the extent the following findings of fact are conclusions of law, they are adopted as such, and vice versa.

A. [Debtor] shall continue to make the payments, taxes, insurance {including flood}, and all utilities on the Tradd Street Property and [Mrs. Golestan] shall have the full and sole use of said property during the pendency of this action.

B. [Debtor] shall keep current all payments, taxes and insurance on the car [Mrs. Golestan] currently drives and shall have use of this vehicle. [Mrs. Golestan] shall be responsible for maintenance, repairs, gas and oil.

C. [Debtor] shall keep up all medical, dental and other health policies he currently has in place and not change any beneficiaries on the same. Any medical expenses of the children not covered by [Debtor's] insurance shall be [Debtor's] responsibility.

D. [Debtor] shall keep all life insurance policies currently in effect and not change any beneficiaries in regard to same.

E. [Debtor] shall pay the sum of $25,000 unallocated support [monthly] to [Mrs. Golestan] for taking care of the needs of the children, [Mrs. Golestan's] needs and other household expenses.

Under a section entitled "LONDON/STORED FURNITURE," the *Pendente Lite* Order provided that Debtor was responsible for the storage fees for certain furniture located in London. Finally, under a section entitled "ATTORNEY'S FEES AND SUIT MONEY," the *Pendente Lite* Order states that "the court is requiring, [Debtor], at this time to pay [Mrs. Golestan's] attorneys the sum of $220,000 towards her attorney's fees to date and estimated costs for future fees and $75,000 toward forensic accounting fees to date and estimated future costs."

3. On May 7, 2019, Mrs. Golestan filed a Petition for Rule to Show Cause in the Family Court, which resulted in an order entered on October 4, 2019 ("10-4-19 Order"). The 10-4-19 Order ordered Debtor to pay $4,500 in storage fees and $295,000 for Mrs. Golestan's attorney's and expert's fees and costs by no later than October 28, 2019. The 10-4-19 Order provided that if Debtor failed to make the payments by the October 28, 2019 deadline, the Court would issue a bench warrant and Debtor would be arrested and confined for a period of 60 days with an early release dependent on Debtor completing a purge through the payment of the amounts required by the 10-4-19 Order.

4.    Debtor did not make in full the payments required by the deadline ordered in the 10-4-19 Order.

5.    Debtor filed his petition for relief under Chapter 11 of the Bankruptcy Code on October 28, 2019 at 4:19 P.M. (the "Petition Date"), prior to the issuance of any bench warrant referenced in the 10-4-19 Order.

6.    After Debtor filed his bankruptcy petition, at 5:12 P.M. on October 28, 2019, the Family Court entered an order ("10/28/19 Order"), which found Debtor to be in contempt and, among other things, limited Debtor's ability to conduct discovery in the Family Court proceedings until such time as Debtor's payment of the obligations ordered in the 10-4-19 Order regarding storage, expert's, and attorney's fees.

7.    On November 11, 2019, Debtor filed his bankruptcy schedules with the assistance of counsel in this bankruptcy case. While Debtor was initially represented by counsel in this bankruptcy case, both law firms have since withdrawn as Debtor's counsel, effective December 13, 2019. From that date, Debtor has acted *pro se* in all matters in this bankruptcy case.

8.    On January 23, 2020, Debtor amended his schedules. His amended schedules indicate, among other things, a "disputed" priority claim of $50,000 to Mrs. Golestan for domestic support obligations and a "disputed" non-priority, unsecured claim of $560,000 to Mrs. Golestan for Family Court ordered professional fees.

9.    On December 13, 2019, Mrs. Golestan's 362 Motion was filed seeking relief from stay to permit the Family Court to "assess all outstanding post-petition amounts owed by [] Debtor and to proceed through to final divorce and custody orders, including final establishment of domestic support obligations, and . . . to have the Family Court determine [the] division of marital assets and liabilities [("Equitable Distribution")] for enforcement in this [Bankruptcy] Court in

3

accordance with the Bankruptcy Code." In addition, Mrs. Golestan's 362 Motion requests "the Family Court be allowed to cite [] Debtor for post-petition contempt, if necessary, to enforce the Family Court's post-petition orders and [] Debtor's payment of post-petition domestic support obligations."

10.    On December 26, 2019, Debtor filed a § 362 motion which seeks relief from stay to allow the parties to return to Family Court: (a) to determine any modifications to an order for domestic support obligations; (b) to determine child custody and visitation matters; and (c) to pursue dissolution of marriage.

11.    Throughout Debtor's bankruptcy case, Mrs. Golestan has asserted that Debtor failed to pay the obligations required by the *Pendente Lite* Order both prepetition and post-petition, including, but not limited to, a significant amount of the monthly domestic support payments. These payments include the monthly child/spousal support payments, payments to maintain the family's health and life insurance coverage, the mortgage, utility and home insurance payments for the Tradd Street Property, and Mrs. Golestan's automobile and auto insurance payments.

12.    In reply, Debtor does not dispute that he has not fully paid the post-petition payments but asserts that he cannot afford to make all of the required payments, and that he needs time to formulate a bankruptcy reorganization plan to repay these obligations as well as those to other creditors. Specifically, Debtor indicated that he has paid $5,000 each month of the required $25,000 monthly payment to Mrs. Golestan from his only income, $10,000 per month from Micfo, LLC. Further, at the hearing on the Motions, Debtor did not dispute that the following post-petition payments were in the nature of domestic support obligations: monthly child/spousal support payments of $25,000, payments to maintain the family's health and life insurance coverage, the mortgage, utility and home insurance payments for the Tradd Street Property, and Mrs. Golestan's

4

automobile and auto insurance payments required under the *Pendente Lite* Order. Debtor disputes

that any payments ordered by the Family Court for Mrs. Golestan's professional fees, including

her attorney's and other professionals' fees and costs, are domestic support obligations.

13.    On December 30, 2019, the Family Court issued an order, which sought

clarification from this Court as to the effect of the automatic stay under 11 U.S.C. § 362.[4]

Specifically, the Family Court inquired:[5]

- Whether the present bench warrant that would have issued on October 29, 2019 for [Debtor] is stayed due to [Debtor's] bankruptcy filing[?]

- Whether a motion to reduce or otherwise modify a domestic support obligation is stayed due to [Debtor's] bankruptcy filing[?]

- What discovery can proceed in the pending family court case in light of [Debtor's] bankruptcy filing[?][6]

14. At the conclusion of the hearing on the Motions, the Court requested from Mrs. Golestan's

counsel all of the relevant Family Court orders, and the following were provided:

- The *Pendente Lite* Order entered on February 20, 2019;

- The Consent Order Regarding Audio and Visual Recording of Professionals entered on April 9, 2019;

- Order on Guardian's Notice of Motion and Motion for Expedited Relief entered on May 14, 2019;

- Order of Contempt on Plaintiff's Petition for Rule to Show Cause Filed on May 7, 2019 (10-4-19 Order) entered on October 4, 2019;

---

[4]    Further reference to the Bankruptcy Code (11 U.S.C. § 101, *et al.*) shall be by section number only.

[5]    Many of the Family Court's orders in the divorce proceedings, including the December 30, 2019 order, were not presented to the Court for consideration until the hearing on the Motions held on January 22, 2020. This Court had no prior notice of the Family Court's specific requests.

[6]    In addition, the December 30, 2019 Family Court order ruled that each party shall pay their own forensic expert's fees and costs and that Debtor has the right to seek reimbursement for his forensic expert's fees and costs if it is determined that certain audio and video recordings he produced in the divorce proceedings were not altered. The Family Court also indicated that its financial ruling on the forensic expert's fees and costs is subject to the review and approval of the Bankruptcy Court. Neither party has requested this Court review or approve the Family Court's ruling on the costs and fees for the parties' forensic experts, and the Court declines any further determination until the matter is railed to this Court by a party to the bankruptcy case.

- Order Re: Motion to Compel Nelson, Mullins, Riley & Scarborough, LLP entered on October 8, 2019;

- Order on Plaintiff's Notice of Motion and Motion to Quash Subpoenas and/or for Protective Order and Plaintiff's Amended Notice of Motion and Motion to Set Timing of Discovery and/or for Protective Order and for Fee Advance (10-28-19 Order), entered on October 28, 2019 at 5:12 P.M.;

- Order on Plaintiff's Motion to Compel Discovery Filed July 25, 2019, signed on November 4, 2019;

- Consent Order Re: Guardian *ad Litem*'s Expedited/Emergency Motion entered December 9, 2019;

- Order Re: Guardian *ad Litem*'s Expedited/Emergency Motion entered December 12, 2019; and

- Order from October 29, 2019 Hearing entered on December 30, 2019.

## CONCLUSIONS OF LAW

Central to this matter is the effect of the automatic stay on the domestic proceedings before the Family Court and the related payments under the *Pendente Lite* Order and other orders as both the parties through their Motions and the Family Court through the December 30, 2019 Order seek clarification and request to resume, to various degrees, the proceedings in the Family Court.

### *The Automatic Stay*

The Bankruptcy Code provides a statutory injunction under § 362, known as the automatic stay, which freezes the collection of debts and other actions in most judicial proceedings, including state court proceedings, in order to provide a debtor with a breathing spell, and, in a chapter 11 case, provides an opportunity to propose a structured reorganization plan to repay all creditors. Repayment through a bankruptcy plan benefits the debtor and provides protections to creditors by allowing for an orderly and centralized payment of the entire collection of claims. *See* H. R. Rep. No. 95–595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6296–97; S. Rep. No. 95–989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835–36 (discussing chapter 13 repayment plans).

Section 362(a) provides in relevant part that a bankruptcy petition operates as a stay of:

6

     (1) The commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy case], or to recover a claim against the debtor that arose before the commencement of the [bankruptcy case].

     (2) The enforcement, against the debtor, or against property of these estate, of a judgment obtained before the commencement of the [bankruptcy case];

     (3) Any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . .

Also important, the automatic stay under § 362 is a self-executing federal law that stays matters and proceedings wherever located, even without notice of the bankruptcy filing. *See In re A.H. Robins Co., Inc.*, 63 B.R. 986, 988 (Bankr. E.D. Va. 1986), aff'd 839 F.2d 198 (4th Cir. 1988) ("The automatic stay is a self-executing provision of the Bankruptcy Code and begins to operate nationwide, without notice, once the debtor files its petition for relief."). Further, the consequences of violating the stay are significant. Any action in violation of the stay is void *ab initio*. *See Weatherford v. TIMMARK (In re Weatherford)*, 413 B.R. 273, 283–84 (Bankr. D.S.C. 2009) (holding a judgment obtained in violation of the automatic stay is void *ab initio* and without legal effect). In addition, any party that willfully violates the automatic stay may be subject to sanctions and liability for damages under § 362(k). *See, e.g., Davis v. Blair (In re Davis)*, C/A No. 17-06271-JW, Adv. Pro. No. 18-80038-JW (Bankr. D.S.C. Oct. 3, 2018) (holding that an arrest warrant was void and holding a further hearing to determine if non-debtor spouse who pursued contempt proceedings that resulted in the arrest warrant was liable for damages under §362(k)).

The filing of a bankruptcy petition also sets a line of demarcation between the prepetition assets and liabilities and post-petition assets and liabilities. The relative rights of parties and the treatment of obligations may be different depending on whether they arise prior to the filing of the bankruptcy petition or arise after the bankruptcy petition.

7

Despite the broad scope of the automatic stay, the Bankruptcy Code also expressly provides statutory exceptions, which permit certain proceedings to commence or continue regardless of the filing of a debtor's bankruptcy case. The matters not automatically stayed under §362(b) which may be pertinent to the Motions before the Court include:

(1) . . . the commencement or continuation of a criminal action or proceeding against the debtor;

(2) . . .

    (A) of the commencement or continuation of a civil action or proceeding—

. . .

        (ii) for the establishment or modification of an order for domestic support obligations;

        (iii) concerning child custody or visitation; [or]

        (iv) for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate;

    (B) of the collection of a domestic support obligation from property that is not property of the estate;

    (C) with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute . . . .[7]

The consideration of these exceptions requires careful analysis. For instance, while the Bankruptcy Code permits the collection efforts of domestic support obligations from non-estate assets, the automatic stay significantly limits the collection of property divisions and domestic support obligations from property of the estate. In an individual debtor's chapter 11 case, the bankruptcy estate is comprised of all property acquired by the debtor (both prepetition and post-petition) and debtor's post-petition earnings under §§ 541 and 1115. As a result, most efforts to collect domestic support obligations from an individual chapter 11 debtor are stayed by the automatic stay, unless those efforts specifically fall into and are denominated as one of the listed

---

[7]    The Court notes that the Bankruptcy Code also provides additional exceptions to the automatic stay for the enforcement of domestic support obligations, including the suspension of a driver's or professional license, the reporting of unpaid support to a consumer reporting agency and the interception of a tax refund.

exceptions—namely that the collection is from non-estate assets, or from a wage garnishment created by a judicial or administrative order or statute.

### *The Parties' Request to Proceed on Excepted Matters*

In the present matter, both parties seek and agree on the need for the Family Court to resume divorce proceedings and address matters expressly excepted from the automatic stay under § 362(b). Debtor's 362 Motion is limited to matters expressly excepted from the automatic stay by statute, including "1) the establishment or modification of an order for domestic support obligations, 2) concerning child custody or visitation and[] 3) for the dissolution of a marriage, except to the extent that such proceedings seek to determine the division of property that is property of the estate." Similarly, Mrs. Golestan's 362 Motion requests, among other items, for the Family Court "to proceed to final divorce and custody orders, including final establishment of domestic support obligations . . . ."

As such proceedings are expressly excepted from the automatic stay, a relief from stay order is not necessary for the parties and Family Court to proceed with such matters. However, due to the significant consequences of a willful violation of the stay and because of the contentious nature of the disputes between the parties, the Court understands the parties' desire for clarification. Therefore, to provide clarification to the parties and the Family Court, both parties and the Family Court may proceed with the matters excepted from the automatic stay by statute:[8]

- Establishing and modifying an order for domestic support obligations,
- Making determinations of child custody and visitation *(including related Guardian ad Litem issues),*
- Proceeding with the dissolution of a marriage, with the exception of determining a division of property that is property of the bankruptcy estate,

---

[8]       Mrs. Golestan also asked the Court at the hearing on the Motions to prohibit Debtor from proceeding in Family Court with the matters excepted from the automatic stay because Debtor has allegedly acted with unclean hands in the bankruptcy case. The Court is unaware of any authority that would permit it to usurp the exceptions to the automatic stay set forth by Congress.

- Collection of domestic support obligations from property that is not property of the bankruptcy estate;
- Collection of domestic support obligations through the withholding of income that is property of the bankruptcy estate under a judicial or administrative order or a statute;
- Commencing a criminal contempt proceeding.[9]

Therefore, to address one of the Family Court's specific inquiries: whether it may modify Debtor's domestic support obligations post-petition, for the reasons stated above, according to § 362(b), it appears that the Family Court may establish or modify Debtor's domestic support obligations required under the *Pendente Lite* Order after the filing of his bankruptcy case.

### Collection of Prepetition Obligations from Property of the Bankruptcy Estate

The *Pendente Lite* Order filed February 20, 2019 was the first order issued by the Family Court, which established financial obligations for Debtor and was intended to maintain the status quo between the parties until a final hearing. In addition to addressing child custody and temporary possession of marital assets, the Family Court ordered payments by Debtor in several sections of the order denominated as "CHILD SUPPORT/ALIMONY AND/OR SEPARATE MAINTENANCE AND SUPPORT"; "GUARDIAN AD LITEM"; "PSYCHOLOGICAL EVALUATIONS AND CHILD CUSTODY EVALUATIONS"; "LONDON/STORED FURNITURE"; "ATTORNEY'S FEES AND SUIT MONEY". Critical to the order was the Family Court's determination that Debtor had historically reported a limited personal income but

---

[9]     As discussed later herein, civil contempt orders are generally stayed by the automatic stay and "a state court's characterization of the contempt order is not determinative for the purposes of the application of the automatic stay, and bankruptcy courts look to the purpose and character of the state court's contempt order to determine the nature of that contempt order." *Tydings v. Tydings (In re Tydings)*, C/A No. 18-04579-JW, Adv. Pro. No. 18-80072-JW, slip op. at 11 (Bankr. D.S.C. Nov. 2, 2018) (citing *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1401 (6th Cir. 1991); *In re Goodson*, C/A No. 17-41820-JJR, 2018 WL 722461 at *9 (Bankr. N.D. Ala. Feb. 5, 2018)). As a result, bankruptcy courts have held that a contempt order was civil in nature after the state court labeled the contempt matter as criminal when the contempt proceeding was merely to coerce payment and not an effort to vindicate the court's authority. *See Goodson*, C/A No. 17-41820-JJR, 2018 WL 722461 at *9–10; *see also Tydings*, C/A No. 18-04579-JW, Adv. Pro. No. 18-80072-JW, slip op. at 11–15 (considering the nature of the family court's contempt order that incarcerated debtor to determine if the contempt order was civil or criminal in nature).

paid significant family living expenses "by making contributions from his different business entities toward the parties' living expenses."

Under "CHILD SUPPORT/ALIMONY AND/OR SEPARATE MAINTENANCE AND SUPPORT", the Family Court ordered Debtor to:

- "[C]ontinue to make the payments, taxes, insurances {including flood}, and all utilities on the Tradd Street Property"
- "[S]hall keep current all payments, taxes and insurance on the car [Mrs. Golestan] currently drives"
- "[K]eep up all medical, dental, and other health policies, he currently has in place and not change any beneficiaries on same" and be responsible for any medical expenses of the children not covered by his insurance
- "[S]hall keep all life insurance policies currently in effect and not change any beneficiaries in the regard to the same"
- "[S]hall pay the sum [per month] of $25,000 unallocated support to [Mrs. Golestan] for taking care of the remaining needs of the children, [Mrs. Golestan's] needs, and other household expenses."

Additionally, under "GUARDIAN AD LITEM", Debtor was also ordered to  "pay $3,000 initial GAL fees to the Guardian within 30 days after her appointment and the GAL may charge up to $15,000 at her normally hourly GAL fee without prior [Family Court] approval." The Family Court ordered that Debtor pay all of the guardian *ad litem* fees (subject to a possible future reallocation of the fees at the Family Court judge's discretion).

Under "PSYCHOLOGICAL EVALUATIONS AND CHILD CUSTODY EVALUATIONS", the Family Court ordered that Debtor shall pay the initial costs of the family's evaluations (subject to a possible future reallocation of the costs at the Family Court judge's discretion).

Under "ATTORNEY'S FEES AND SUIT MONEY", the Family Court ordered that at the time of the entry of the *Pendente Lite* Order, Debtor shall "pay [Mrs. Golestan's] attorneys the

sum of $220,000 towards her attorney's fees to date and estimated costs for future needs and $75,000 toward forensic accountant fees to date and estimated future costs."

Under "LONDON/STORED FURNITURE", the Family Court ordered Debtor "shall be responsible for paying the storage on [certain] furniture either in London or Charleston."

Additionally, under a separate order entered on May 14, 2019, the Family Court ordered Debtor to pay an additional $7,405.50 for Mrs. Golestan's attorney's fees.

By Order entered on October 4, 2019, the Family Court determined that Debtor had not paid the furniture storage fees and the advance of Mrs. Golestan's attorney's and forensic expert's fees ordered under the *Pendente Lite* Order and found Debtor in civil contempt, allowing Debtor to purge the civil contempt by making payment of the outstanding amounts within 60 days. The 10-4-19 Order also ordered Debtor to pay $60,035.82 in additional fees and costs for Mrs. Golestan's attorney and experts. Upon Debtor's failure to make payment of $4,500 in storage fees and $295,000 in attorney's and expert's fees within 60 days of August 28, 2019, the Court indicated that it would issue a bench warrant to jail Debtor for 60 days, subject to an early release upon payment.

By a consent order entered on October 8, 2019 regarding discovery disputes, Debtor was ordered to pay $3,500 as additional attorney's fees of Mrs. Golestan on or before September 25, 2019.[10]

---

[10]    In addition, there were several Family Court orders that required payments by Debtor, which were entered after Debtor filed his bankruptcy case, including:

- Under an order entered on October 28, 2019 at 5:11 PM, Debtor was ordered to pay an additional $225,000 to Mrs. Golestan's counsel as an additional advance on her attorney's fees and costs.

- Under a November 7, 2019 order, with the agreement of the parties, Debtor was ordered to pay $5,112.67 in additional attorney's fees of Mrs. Golestan within 30 days of October 24, 2019.

- Under a December 9, 2019 order, with the agreement of the parties, Debtor was ordered to pay $3,750 in attorney's fees and costs incurred by the Guardian *ad Litem*.

All of the obligations which arose prior to the bankruptcy filing are prepetition obligations. As stated above, the collection of all payment obligations ordered prepetition are stayed unless excepted by statute or stay relief is granted by this Court. Some prepetition obligations in this case appear to fall under the definition of domestic support obligations, which have a higher priority of repayment in a bankruptcy case, including the maintenance payments listed under the "CHILD SUPPORT/ALIMONY AND/OR SEPARATE MAINTENANCE AND SUPPORT" section of the *Pendente Lite* Order, such as the $25,000 a month payment to Mrs. Golestan, the maintenance of health, life, auto and homeowner's insurance by Debtor, and the payments related to the Tradd Street Property and Mrs. Golestan's vehicle.

However, other ordered payments, such as the London storage fees and the attorney's and expert's fees, may not fall within the domestic support category and therefore would fall within the general unsecured class of creditors.[11] Ultimately, the true nature of these obligations for purposes of discharge and payment classification are matters to be determined by the Bankruptcy Court. *In re Fickling*, C/A No. 12-02719-jw, slip op. at 7 (Bankr. D.S.C. Oct. 2, 2012) ("Federal Bankruptcy law governs the determination of whether a debt is in the nature of alimony, maintenance, or support.").

While prepetition domestic support obligations are non-dischargeable first priority unsecured claims under §§ 507(a)(1)(A) and 523(a)(5), they may generally be managed (including the timing of payments) and paid under the terms of a chapter 11 plan.[12] For these reasons, it is not uncommon for debtors in a reorganization chapter of the Bankruptcy Code, such as chapter 11 and

---

[11]    Debtor's amended schedules indicate this position.

[12]    Specifically, § 1129(a)(9)(B) provides that if the plan is accepted by the claimant of the domestic support obligation payments, the debtor may make deferred cash payments of value equal to the outstanding prepetition domestic support obligations, and if the plan is not accepted by the claimant, the debtor must make payment of the outstanding prepetition domestic support obligations on the effective date of the confirmed chapter 11 plan.

chapter 13, to address and provide for the payment over time of prepetition domestic support obligations through a controlling confirmed plan. While the Bankruptcy Code provides an exception to the automatic stay for the collection of prepetition domestic support obligations from property that is not property of the estate, the collection of prepetition domestic support obligations from property of the estate is generally subject to the automatic stay under § 362(a).[13] However, any efforts to collect on obligations related to property or other debt obligations required by a family court order before the filing of a bankruptcy case are clearly stayed under § 362.

In its December 30, 2019 order, the Family Court inquired whether the stay affected its ability to issue a post-petition bench warrant to incarcerate Debtor for his failure to make the payments created by prepetition orders.

The restrictions on collection of prepetition obligations are broad and most bankruptcy courts, including this Court, have held that without authorization from the bankruptcy court, § 362 stays a family court action against a debtor for civil contempt that is designed to enforce and compel a prepetition payment obligation under a family court order from property of the estate. *See Davis v. Blair (In re Davis)*, C/A No. 17-06271-JW, Adv. Pro. No. 18-80038-JW (Bankr. D.S.C. Oct. 3, 2018); *In re Repine*, 536 F.3d 512 (5th Cir. 2008); *In re DeSouza*, 493 B.R. 669 (1st Cir. B.A.P. 2013); *In re Gilford*, 567 B.R. 412 (Bankr. D. Mass. 2017); *In re Jordahl*, 555 B.R. 861 (Bankr. S.D. Ga. 2016); *In re Caffey*, 384 B.R. 297 (Bankr. S.D. Ala. 2008) aff'd 2010 WL 2508907 (11th Cir. 2010); *see also In re O'Brien*, 574 B.R. 369 (Bankr. N.D. Ga. 2017) (finding a willful violation of the stay where ex-spouse filed a post-petition contempt motion alleging debtor failed to comply with prepetition state court order requiring the payment of attorney's fees

---

[13]    The limited exception to this general rule is the withholding of income that is property of the estate under a judicial or administrative order or by statute. See § 362(b)(2)(C).

under a domestic order related to paternity and child custody). Such post-petition efforts to collect or force payment would be in violation of the stay, would be void *ab initio*, and would also expose the violating parties to an award of actual and punitive damages under § 362(k).

In this instance, it appears the post-petition issuance of the bench warrant referenced in the 10-4-19 Order would be in the nature of civil contempt as it is designed to coerce payment from Debtor as indicated by the opportunity to be released and purge the contempt finding by payment.[14] While this Court is permitted, in its discretion, to lift the automatic stay as to the bench warrant for cause under § 362(d), no such request has been made to the Court at this time. Therefore, the Court finds the post-petition issuance of a bench warrant referenced by the Family Court in the 10/4/19 Order is stayed by the automatic stay until otherwise ordered by this Court.

Similarly, it appears the provisions of the Family Court's 10/28/19 Order, which limits Debtor's ability to conduct discovery in the divorce proceedings until he makes payments under the prepetition *Pendente Lite* Order would violate the automatic stay because this limitation to conduct discovery is designed to coerce Debtor to pay Mrs. Golestan's attorney's and expert's fees and the London storage fees ordered prepetition, all other prepetition obligations, in compliance with the Family Court's orders and to compensate Mrs. Golestan for losses sustained (civil in nature), rather than a means to vindicate the Family Court's authority (criminal in nature). Furthermore, this Court finds that, to the extent it relates to payments of prepetition obligations, the 10/28/19 Order is void *ab initio* as it was entered after Debtor filed his petition. For these

---

[14] Sanctions are often considered civil in nature if the sanction would be lifted upon the payment of a purge or other affirmative command of the Court. Alternatively, "a fixed sentence of imprisonment is punitive and criminal if it is imposed retrospectively for a 'completed act of disobedience' such that the contemnor cannot avoid or abbreviate the confinement through later compliance." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828, 114 S.Ct. 2552, 2557–58 (1994) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 443, 31 S.Ct. 492, 498 (1911)).

reasons, enforcement of the discovery limitation under the 10/28/19 Order would violate the automatic stay to the extent it was used as a means to collect prepetition obligations.

### *Requests for Relief from Stay by Mrs. Golestan*

Mrs. Golestan's 362 Motion also seeks a lifting of the automatic stay by this Court to permit the Family Court to determine equitable distribution between the parties and to permit the collection of post-petition payments required under the *Pendente Lite* Order that have not been paid by Debtor, including commencing civil contempt proceedings in the Family Court.

While such matters are not excepted by statute from the effects of the automatic stay, under § 362(d)(1), relief from the automatic stay may be granted by the Court upon a showing of "cause." "Because the Code provides no definition of what constitutes 'cause,' courts must determine when discretionary relief is appropriate on a case-by-case basis." *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992). "A decision to lift the automatic stay under section 362 of the Code is within the discretion of the bankruptcy judge and this decision may be overturned on appeal only for abuse of discretion." *Id.* In determining whether to lift the automatic stay, the bankruptcy court must "balance the potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *Id.*

The Court will consider each of Mrs. Golestan's requests to lift the automatic stay separately.

### *Relief to Permit Family Court to Determine Equitable Distribution*

Mrs. Golestan requests the Court lift the automatic stay for cause to permit the Family Court to finalize the divorce between the parties (a statutory exception to the automatic stay) and to determine the equitable distribution of the parties' marital assets and liabilities, which would include determinations involving property of the bankruptcy estate.

In determining whether the stay should be lifted to permit a state court to determine issues that are also presented to the bankruptcy court, the Court of Appeals for the Fourth Circuit in *In re Robbins* stated that:

> The factors that courts consider in deciding whether to lift the automatic stay include (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*Id.*

Considering the first factor of *Robbins*, the determination of equitable distribution as part of the parties' divorce proceedings is primarily a matter of state law and is soundly within the expertise of the Family Court. "[E]quitable distribution disputes [are] in the category of cases in which state courts have a special expertise and for which federal courts owe significant deference." *Id.* The Family Court routinely determines such property distributions. In addition, this Court finds that the determination of the parties' equitable distribution rights will help to set Mrs. Golestan's prepetition claims in the bankruptcy case, and therefore assist this Court in determinations related to the liquidation of estate assets and payment of claims. Therefore, this factor favors a lifting of the automatic stay to permit the Family Court to make such determinations.

As to the second factor, the Court finds judicial economy will best be served with a lifting of the automatic stay at this point to permit the Family Court to determine equitable distribution. The Family Court divorce proceeding was commenced prepetition and has been pending for more than a year with each party being zealously represented by specialized domestic counsel; whereas, Debtor's bankruptcy case has been pending for more than three months without progress towards a repayment plan or liquidation due in party to Debtor's changes to his legal representation and in

17

part due to the volume of litigation in this Court related to domestic issues and discovery between the domestic litigants. Not only is the Family Court better suited to make determinations of equitable distribution, but the Family Court is also the proper forum for most of the highly contested litigation arising between the parties. Such a ruling would also allow this Court to focus on reorganization and liquidation issues. Therefore, judicial economy favors a lifting of the automatic stay.

Finally, as to the third factor, this Court believes the bankruptcy estate can be protected by placing conditions on the lifting of the automatic stay. Specifically, while this Court permits the Family Court to determine equitable distribution as part of the divorce proceeding, in order to protect the bankruptcy estate and other creditors' interests, the stay shall remain in effect to prohibit any act to collect, recover, transfer, encumber, or liquidate any property of the bankruptcy estate without a further order of the Bankruptcy Court to enforce equitable distribution. In essence, the Family Court will determine the equitable distribution and division of marital assets and liabilities but shall delay enforcement against property of the bankruptcy estate until further order of this Court. This condition is important as it allows this Court to assess the progress of Debtor's reorganization, including liquidation of estate assets as a means of protecting the interests of all creditors. Therefore, after considering the factors stated in *Robbins*, the Court finds sufficient cause under § 362(d)(1) to lift the automatic stay to permit the Family Court to determine equitable distribution under the conditions set forth herein.

### *Relief to Permit Collection of Post-Petition Domestic Support Obligations Payments*

Mrs. Golestan also requests relief from the automatic stay to allow her to commence enforcement actions against Debtor, including permitting the Family Court to hold Debtor in civil contempt, for his failure to make post-petition domestic support obligation payments (payments

that first became due after the filing date of October 28, 2019 at 4:19 PM), including those required

under the *Pendente Lite* Order. Specifically, Mrs. Golestan alleges that since the filing of Debtor's

bankruptcy petition, he continues to fail to make the full amount of the "$25,000 monthly

child/spousal support payment, fail[ed] to comply with his obligation to pay the family's health

insurances thereby causing it to lapse . . . , and fail[ed] to comply with his obligation to pay utilities

on the house occupied by [Mrs. Golestan] and the minor children causing utility services to be shut

off." It appears that Debtor does not dispute that he has failed to fully make these ongoing post-

petition payments to Mrs. Golestan or that these specific payments are in the nature of domestic

support obligations or that they are continuing monthly requirements. As to the other payments

under the *Pendente Lite* Order, including the payments for Mrs. Golestan's attorney's and expert's

fees and costs, the Court cannot conclude, from the record provided at this time, that those

payments are domestic support obligations. However, it does appear to this Court that payments

ordered post-petition to be paid to the guardian *ad litem* or her attorneys are for the benefit of the

parties' minor children and fall within the domestic support obligation category, including the

$3,750 payment ordered by the December 12, 2019 order of the Family Court. *See In re Guy*, C/A

No. 95-71887, Adv. Pro. No. 95-8143, slip op. (Bankr. D.S.C. Sept. 26, 1995) (finding payments

ordered for the guardian *ad litem*'s fees for the benefit of the debtor's minor children was in the

nature of alimony, maintenance or support).

Under federal bankruptcy law, Debtor is under an obligation to stay current on the post-

petition domestic support obligations. Under § 1112(b)(4), the "failure of debtor to pay any

domestic support obligations that first become payable after the date of the filing of the petition"

is "cause" for dismissal or conversion to chapter 7 of an individual debtor's chapter 11 bankruptcy

case. Further, under § 1129(a)(14), a chapter 11 plan cannot be confirmed unless the debtor has paid all court-ordered domestic support obligations that became due post-petition.

Balancing the hardships that Mrs. Golestan and parties' minor children will continue to suffer if the stay is not lifted against the prejudice that Debtor's estate may incur if the automatic stay is lifted, the immediate hardships to Mrs. Golestan and the parties' children outweigh the possible prejudice to Debtor. If Debtor's failure to comply with his post-petition obligations under the *Pendente Lite* Order continues and the Court does not grant relief, Mrs. Golestan and the minor children appear to be at risk of not having essential living necessities, such as housing, transportation, and medical insurance coverage, and would be without any immediate way to enforce such obligations against Debtor except by the withholding of Debtor's income or seeking payment from non-estate property. While Debtor indicated that it is his intent to cure the delinquent support payments, Debtor has not clearly delineated a course of action in this Court or moved forward with action or a plan that will allow him to become current and then remain current on post-petition domestic support obligations. Debtor's case has been pending for more than three months with little indication of any progress towards the confirmation of a feasible plan of reorganization. While Debtor indicated the he was considering employment of a real estate firm to liquidate his LLCs' properties and the homestead, he did not demonstrate that he has done so at the time of the hearing.

Balancing the prejudice to the parties, the Court finds, for the foregoing reasons, that cause also exists to lift the automatic stay to permit Mrs. Golestan to enforce the ongoing post-petition monthly domestic support obligations payments, including those required under the *Pendente Lite* Order, which first became due after October 28, 2019 at 4:19 P.M. and certain other post-petition orders: (1) the $25,000 monthly payment of unallocated support paid to Mrs. Golestan, (2) the

payments, taxes, insurance and utilities for the Tradd Street Property, (3) the payments, taxes and insurance associated with Mrs. Golestan's vehicle, (4) the maintenance of Debtor's medical, dental and other health insurance policies, (5) the payment of the minor children's medical expenses not covered by health insurance, (6) the maintenance of Debtor's life insurance policy, and (7) the $3,750 in guardian *ad litem* fees that the Family Court ordered post-petition. Further, this lifting of the stay permits Mrs. Golestan to petition the Family Court to hold Debtor in civil contempt for the failure to pay the domestic support obligations listed above. While this Court is concerned that such relief may result in the incarceration of Debtor, which, as a consequence, may affect his ability to pursue a bankruptcy reorganization, the Court is convinced that the Family Court must have an effective way to enforce its orders on an interim basis regarding the post-petition domestic support obligations which appear necessary for the welfare of Mrs. Golestan and the minor children as stated by the Family Court.

However, in order to protect the property of the bankruptcy estate for the benefit of all creditors, the Court finds it necessary to similarly condition the relief from the automatic stay as to these post-petition domestic support obligations. Therefore, in addressing any contempt proceedings concerning Debtor's post-petition domestic support obligations, the stay shall remain in effect and prohibit any act to transfer, encumber, or liquidate any property of the bankruptcy estate without a further order of the Bankruptcy Court, unless otherwise statutorily excepted from the automatic stay under § 362(b).

At this time, this relief from stay as to civil contempt powers is limited to *post-petition* domestic support obligations which first became due after October 28, 2019 at 4:19 P.M., as

21

opposed to enforcement of those obligations which first became due prepetition, such as the payment of fees for Mrs. Golestan's counsel and experts.[15]

### *Application of Stay under Fed. R. Bankr. P. 4001(a)(3)*

Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure provides that "[a]n order granting a motion for relief from an automatic stay . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." At the hearing, Mrs. Golestan requested the Court to waive the stay under Fed. R. Bankr. P. 4001(a)(3) so that the stay is lifted immediately upon the entry of this Order. Debtor has not consented to a waiver of the stay under Fed. R. Bankr. P. 4001(a)(3). At the hearing, the Court indicated that it was inclined not to except this Order from the 14-day stay provided by Fed. R. Bank. P. 4001(a)(3), stating that the time may serve Debtor to make additional progress in his bankruptcy case or obtain funds to catch up his post-petition domestic support obligation payments.

However, as more than 14 days has elapsed from the hearing on the Motions to the issuance of this Order, the Court finds that Debtor has had the benefit of time. For that reasons the Court orders that the 14-day stay of the lifting of the automatic stay provided by Fed. R. Bankr. P. 4001(a)(3) does not apply to this Order.

### *Discovery in the Family Court Proceedings*

The Family Court has also asked this Court to determine the extent that discovery may proceed in the Family Court divorce proceeding while the bankruptcy case is pending. This Court finds that discovery may proceed in the Family Court to the extent that the discovery specifically relates to the matters permitted to be commenced or continued in the Family Court by this Order,

---

[15] The Court notes that under chapter 11 of the Bankruptcy Code, Debtor is acting as the "debtor-in-possession" and therefore, serves as the case trustee in this bankruptcy case until such time as the Court orders otherwise. Consistent with the duties of a case trustee, to the extent any action is taken in Family Court by one of the parties in contravention with this Order, Debtor, in his capacity as debtor-in-possession, may raise such issues to this Court.

subject to the limitations and conditions set forth by this Order, and to matters expressly excepted from the automatic stay under § 362(b). The granting of this relief contemplates that the forum for discovery disputes shall be the Family Court and those disputes shall not be duplicated in this Court.

**<u>CONCLUSION</u>**

For the aforesaid reasons, the Court modifies the automatic stay under § 362 as set forth in this Order.[16]

**AND IT IS SO ORDERED.**

Columbia, South Carolina
February 10, 2020

**FILED BY THE COURT**
**02/10/2020**



Entered: 02/10/2020

*John E Waites*

US Bankruptcy Judge
District of South Carolina

---

[16]    Mrs. Golestan's 362 Motion at paragraph 17 additionally listed 7 specific Family Court pleadings with a request for authorization for the Family Court to proceed with considering those pleadings. However, to its knowledge, most of these motions/pleadings/documents were not provided to the Court; therefore, the Court does not address them specifically in this Order.