## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 19-05657-JW |
| | Chapter 7 |
| Amir Golastan Parast a/k/a Amir Golestan, | **ORDER GRANTING** |
| Debtor(s). | **MOTION TO COMPEL** |

This matter comes before the Court on the Motion to Compel filed by Kristin Golestan ("Movant") on January 7, 2020.  Amir Golastan Parast ("Debtor"), *pro se,* filed an Objection to the Motion to Compel on January 21, 2020, and has asserted his Fifth Amendment privilege against self-incrimination as to the production of certain documents subpoenaed by the Movant in connection with a Rule 2004 examination.  For the reasons stated below, the Court finds that the Fifth Amendment privilege does not apply to protect the production of the disputed documents by Debtor and grants Movant's Motion to Compel.  Pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.

## **FINDINGS OF FACT**

1.      On February 20, 2019, the Family Court for the Ninth Judicial Circuit in Charleston County, South Carolina entered a Pendente Lite Order in the family court proceedings initiated by Movant against Debtor.  The Pendente Order contained provisions for temporary custody of the parties' minor children, for Debtor's continuing payment for the family home, insurance policies, and taxes, as well as payment of a $25,000 per month domestic support obligation to Movant and

attorney's fees to Movant's domestic counsel. Debtor failed to comply with the payments required in the Pendente Lite Order and was found to be in contempt by the Family Court, which ultimately caused Debtor to seek bankruptcy protection to avoid confinement in the Charleston County Detention Center by the Family Court.

2.        In May of 2019, Debtor was indicted for multiple counts of wire fraud in an action before the United States District Court for the District of South Carolina. The indictment alleges that Debtor obtained hundreds of thousands of Internet Protocol Addresses ("IP Addresses") from the American Registry for Internet Numbers ("ARIN") through fraud by creating false owner and officer identities and websites for Channel Partner companies of Debtor's business, Micfo, LLC. After obtaining the IP Addresses, the Debtor is alleged to have caused the Channel Partner companies to sell the fraudulently obtained IP Addresses for profit.

3.        Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 28, 2019.

4.        On November 11, 2019, Debtor filed his bankruptcy schedules and statements. In his schedules, Debtor listed 100% ownership of the Channel Partner entities, including Virtuzo, LLC, Contina, LLC, Telentia, LLC, OppoBox, LLC, Roya Hosting, LLC, Univera Network, LLC, Border Technology, LLC, Fiber Galaxy, LLC, Queen Systems, Inc., Fairway Network, Inc. ("the Channel Partners"). Debtor also listed Bank of America bank accounts held by these entities, including the last four digits of the account numbers on his Statement of Financial Affairs.

5.        On November 14, 2019, Movant filed a Motion for 2004 Examination of Debtor, which was granted by the Court by order entered on November 18, 2019. In connection with the Rule 2004 Examination, Movant subpoenaed numerous documents from Debtor, including bank records from 2016-2019 for the Channel Partners. The order granting the motion for Rule 2004

Examination provided that the Examination would be held on December 2, 2019 at 1:00 p.m.  The

Rule 2004 Examination was continued with the consent of the parties to December 9, 2019.

6.      Debtor failed to appear at the Rule 2004 Examination on December 9, 2019 and

failed to produce subpoenaed documents.

7.      On December 10, 2019, Movant filed an Emergency Motion for an Order (1)

Requiring Debtor to Appear and Show Cause for Debtor's Failure to Attend a 2004 Examination

and to Comply with a Subpoena; (2) Compelling Debtor to Produce Requested Documents and

Appear at a Rescheduled 2004 Examination; and (3) Finding Debtor in Contempt and Granting

Sanctions.

8.      The Court held a hearing on the Emergency Motion on December 13, 2019.

9.      On December 16, 2019, the Court entered an Order (1) Compelling Debtor to

Produce Documents and Appear at a Rescheduled 2004 Examination; and (2) Finding the Debtor

has Failed to Comply with the Court's Order.  The Order compelled Debtor to produce the

documents requested by 5 p.m. on December 17, 2019 and appear at a rescheduled Rule 2004

Examination on December 19, 2019.

10.      On December 17, 2019, Debtor provided numerous documents to Movant's counsel

by email after the 5 p.m. deadline.  Debtor, who was no longer represented by counsel,[1] did not

object to any of the Subpoena requests, file any privilege logs or file any motions relating to the

Subpoena.  Debtor's partial production of documents failed to include many of the requested

documents.

11.      On December 19, 2019, Debtor appeared at the 2004 Examination.  In response to

questioning regarding his failure to produce the 2016 – 2018 bank statements for his Channel

---

[1]      The Court granted Debtor's first counsel's Motion to Withdraw as Counsel by Order entered December 16, 2019.  Debtor's proposed new counsel withdrew its application to employ on December 13, 2019.

Partner accounts, Debtor asserted his Fifth Amendment right against self-incrimination as to the production of those documents.

12. On January 7, 2019, after Debtor refused to produce the Channel Partners bank statements at the 2004 Examination on Fifth Amendment grounds, Movant filed a Motion to Compel production of these bank statements, among other missing documents. Debtor filed an Objection to the Motion to Compel but did not provide any argument in support of his assertion of Fifth Amendment privilege.

13. At the January 22, 2019 hearing on the Motion to Compel, Debtor again asserted his Fifth Amendment rights. Movant argued at the hearing and in her Motion that the Fifth Amendment "Act of Production" privilege does not apply because Debtor's production of the records is not testimonial since Movant had pre-existing knowledge of the bank accounts. She asserts that the existence of the accounts is apparent from a review of Debtor's disclosures in his schedules and Debtor produced 2019 bank statements on many of the accounts for which he asserts the privilege for years 2016-2018. Movant further argues that the documents are corporate records which are not protected under the "collective entity" exception.

14. After the hearing, the Court entered an Order Regarding Discovery on February 10, 2020, which required Debtor to present a statement for *in camera* review describing how the production of the documents is self-incriminating and any supporting grounds and case law for such claim, as well as a copy of the applicable documents within 10 days from the entry of the order.

15. On February 14, 2020, Debtor filed a motion to convert the chapter 11 case to a case under chapter 7 of the Bankruptcy Code. On that same day, the Court entered an order

converting the case to a case under chapter 7 and Michelle L. Vieira was appointed as the Chapter 7 Trustee.

16.    On February 20, 2020, Movant filed her response to the Order Regarding Discovery, indicating that Movant remains unsatisfied with Debtor's production of documents in response to the Subpoena and setting forth with particularity the documents that Debtor has failed to produce.  Movant again requested an order compelling Debtor to produce the outstanding documents.

17.    Debtor submitted his statement in response to the Order Regarding Discovery on February 24, 2020.  In that statement, Debtor states only that the bank statements for which Debtor invoked his Fifth Amendment could shed light on additional proceeds from Debtor's alleged misconduct at issue in in federal indictment, which could subject him to increased prison time (33-41 months).  Debtor also attached to his statement the following documents: (1) a copy of his federal indictment filed on May 14, 2019, (2) a copy of an e-mail, dated September 23, 2019, between Debtor's criminal counsel and U.S. Attorney wherein the U.S. Attorney indicates that Debtor's sentencing is expected to be 27-33 months based on two IP address sale transactions from OppoBox LLC described in an attached email from an FBI Special Agent, dated September 20, 2019, and (3) a Federal Sentencing Guidelines worksheet with handwritten notes by unknown author, and (4) a copy of a letter, dated June 21, 2019, to Movant's domestic counsel from Debtor's domestic counsel containing settlement discussions related to the family court litigation.  Debtor's statement contains no further arguments or case law in support of his claim that the privilege applies.

## CONCLUSIONS OF LAW

### I.    Fifth Amendment Privilege

The Fifth Amendment protects an individual from being compelled to produce evidence which may later be used against him as an accused in a criminal action. *Maness v. Meyers,* 419

U.S. 449, 461 (1975).  It may be asserted in any proceeding, including a bankruptcy proceeding. *McCarthy v. Arndstein,* 266 U.S. 34, 42 (1924).  In *Fisher v. United States*, the Supreme Court held that the Fifth Amendment privilege against self-incrimination could be invoked to protect an individual from being compelled to personally produce documents, even if the contents of those documents were not privileged, if the act of production would have testimonial aspects that could be self-incriminating. 425 U.S. 391, 410 (1976).  For the Fifth Amendment act of production privilege to apply, Debtor must satisfy two requirements: (1) the act of producing the documents must have testimonial aspects and (2) the documents must be self-incriminating.  *In re Sambrano Corp.,* 441 B.R. 562 (Bankr. W.D. Tex. 2010).  The act of production may be testimonial where "compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the [party asserting the privilege]," as well as his belief that the papers are those described in the subpoena, thereby authenticating them pursuant to Fed. R. Evid. 901. *U.S. v. Doe,* 465 U.S. 605, 613 (1984).  However, if each of these considerations is a "foregone conclusion," then the production of the documents would not be testimonial. *See Fisher v. U.S.,* 425 U.S. 391, 411 (1976).  To satisfy the self-incriminating prong, the party asserting the privilege must believe and be able to demonstrate *in camera* that there is a "real and substantial risk" that production of the information may tend to incriminate or lead to incrimination.  *In re Gilboe,* 699 F. 2d 71, 74-75 (2d Cir. 1983); *In re Sambrano Corp.,* 441 B.R. 562, 566 (Bankr. W.D. Tex. 2010). However, to be protected, it is not necessary for the documents to be incriminating or for the information contained to be directly inculpatory, only that the act of producing such documents "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *U.S. v. Hubbell,* 530 U.S. 27, 38 (2000) (quoting *Hoffman v. U.S.,*341 US. 479, 486 (1951).

### a. *Burden of Proof*

The Fourth Circuit has stated that "[a]s a general proposition, the burden of establishing that the Fifth Amendment privilege applies in a particular setting is on the party asserting it." *In re Grand Jury Subpoena John Doe*, No. 05GJ1318, 584 F.3d 175, 184 (4th Cir. 2009). Accordingly, Debtor bears the burden to demonstrate that the act of production is both testimonial and self-incriminating. *Fisher v. U.S.*, 425 U.S at 410-11. Debtor has presented no convincing argument that the act of production of the entity bank account statements is testimonial in nature. He has presented only a statement regarding his belief that disclosure of the documents would subject him to additional criminal penalties under his federal indictment, because they allegedly show incriminating transactions.  It is not clear from the bank records submitted for *in camera* review that the documents reveal incriminating information or that the act of producing these documents would itself involve testimonial self-incrimination. *See id.* at 411.  The Court finds that Debtor has failed to meet his burden of demonstrating that the act of production of the entity bank statements is testimonial.

### b. *Foregone conclusion doctrine*

The Court further finds that the Debtor's act of production is not testimonial because their existence and possession or control by Debtor is a foregone conclusion.  While the personal production of documents often has a testimonial aspect through the verification of possession, existence, and authenticity, the Fifth Amendment privilege does not apply where the existence and possession or control of the documents is a foregone conclusion. *Fisher,* 425 U.S. at 411.  This exception to the act of production privilege is called the foregone conclusion doctrine.  If Movant already knows that the requested documents exist and that Debtor has possession or control of those documents, then the act of producing those documents would not be testimonial and would

not serve as an implicit admission that the documents exist and Debtor has possession and control

of them. *Id.* at 411. The burden of proof for the foregone conclusion doctrine is on the Movant, as

the party moving to compel. *In re Sambrano Corp.,* 441 B.R. 462 (Bankr. W.D. Tex. 2010) (citing

*Doe v. U.S. (In re Grand Jury Subpoena),* 383 F.3d 905, 910 (9th Cir. 2004).  To prove that the

documents' existence and location are foregone conclusions, Movant must demonstrate her prior

awareness of the documents at the time the Subpoena was issued and bears the burdens of

production and proof on the questions of possession and existence of the documents.  *U.S. v.*

*Greenfield,* 831 F.3d 106, 110 (2d Cir. 2016).

In her Motion to Compel, Movant established her awareness of the existence of the bank

statement documents by referencing Debtor's inclusion of the entity bank accounts in his schedules

and statements filed on November 11, 2019, prior to the issuance of the Subpoena, thus providing

Movant, as a creditor in the case, with notice of the existence of those accounts and inevitably

account statements associated with those accounts.[2]   Specifically, Debtor's Statement of Financial

Affairs lists each of the at issue Bank of America accounts, including the name of the entity holding

each respective account and the last four digits of the account number.  Debtor's schedules further

state that he is 100% owner of the entities, thus establishing his control of the entity's bank

accounts and thereby possession of bank statements or ability to obtain such statements as owner

of the entity.  The Subpoena itself also demonstrates Movant's knowledge of the existence of the

entity bank statement documents by listing the entity names and last four digits of account numbers

and indicating that the accounts are "BOA" (Bank of America) accounts. In light of Movant's prior

---

[2]      It is common knowledge that banks and financial institutions keep records and send out statements regarding
their accounts.  *See U.S. v. Ali,* No.PWG-13-3398, 2014 WL 5790996 (D. Md. Nov. 5, 2014) (stating that the fact that
the account holder applied for each of her bank accounts and received monthly statements and other information from
the banks where those accounts are located is sufficiently well-known to be judicially noticeable); *U.S. v. Tervort,*
2008 WL 5273492, at *6-7 (E.D. Cal. Dec. 18, 2008).

knowledge of the existence of these documents and their possession or control by Debtor, Debtor's compelled production would not be testimonial. For the foregoing reasons, the Court finds that the existence and control of the entity bank statements was a foregone conclusion at the time of the Subpoena's issuance.

Since the Court finds that Debtor's act of production would not be testimonial, it is unnecessary to determine whether the production would be self-incriminatory. *See United States v. Fox,* 721 F.2d 32, 40 (2d Cir. 1983) (holding that an act of production must be both testimonial and incriminatory before the act will be protected by the Fifth Amendment). However, even if the Court were to consider the issue, Debtor has failed to meet his burden of proving with sufficient specificity how the act of production of the entity bank statements would be self-incriminating. Debtor produced for *in camera* review more than 900 bank statements for the entities, asserting that the bank accounts "could shed light on [an] additional $800,000 in proceeds that has not been accounted for by the government," without further explanation or identification of the relevant transactions or statements.[3] In his statement submitted with these documents, Debtor further stated that he is concerned that Movant and her counsel will disseminate the bank account information to the government. Debtor has failed to demonstrate that the production of the Channel Partners' bank statements would itself constitute a link in the chain of evidence needed to prosecute Debtor.[4] *See United States v. Schmidt,* 816 F.2d 1477, 1481-82 (10th Cir. 1987) (explaining that in order to invoke Fifth Amendment protection, the party seeking such protection must demonstrate that he

---

[3]     The other documents attached to Debtor's statement, including the copy of his federal indictment, emails between his counsel and the U.S. Attorney, Federal Sentencing Guidelines worksheet and letter containing settlement discussions from his domestic counsel, fail to demonstrate that the Debtor's production of the Channel Partners bank statements would create a real risk of incrimination resulting from the production itself. *See Schmidt,* 816 F.2d at 1481.

[4]     Throughout the bankruptcy case, Debtor has had criminal counsel representing him in the U.S. District Court criminal action. Debtor's criminal counsel sought and obtained approval of its employment as special counsel in the criminal action by this Court, but has not offered any argument regarding whether the production would expose Debtor to further incrimination in the criminal action or made an appearance regarding this matter.

has reasonable cause to apprehend danger upon giving a responsive answer that would support a conviction, or the production would furnish a link in the chain of evidence needed to prosecute them for a violation of the criminal statutes). Debtor's compelled production of the bank account statements would only provide implicit testimony that the accounts exist and that he has control over the accounts as the 100% owner of the entities, facts which are a foregone conclusion because he has disclosed all of this information in his Schedules, which are accessible to the U.S. Attorney as part of the public record in this case. The mere production of the bank statements does not require Debtor to authenticate them as they can be authenticated by Bank of America, nor does the production require Debtor to concede the truth of their contents since they are records created by a third party. *See U.S. v. Ali,* No.PWG-13-3398, 2014 WL 5790996 (D.Md. Nov. 5, 2014) (finding that the mere production of bank statements could not be incriminating because it did not require the party asserting the privilege to authenticate the bank statements or concede the truth of their contents). Debtor must "factually establish that the risks of incrimination resulting from [his] compelled testimonial communications to be substantial and real, not merely trifling or imaginary, hazards of incrimination" by offering evidence or sworn statements to justify his claim." *Schmidt,* 816 F.2d at 1481. Debtor has not met his burden.[5]

### c. *The collective entity exception*

Finally, Movant also contends that Debtor cannot claim Fifth Amendment rights as to the entity bank statements because a corporation has no Fifth Amendment rights. The Fifth Amendment privilege is purely personal, and it applies only to natural individuals. *See U.S. v.*

---

[5]    The Court further observes that Debtor produced the 2019 bank records for many of these entities in response to Movant's Subpoena. "It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *U.S. v. Ali,* No. PWG-13-3398, 2014 WL 5790996, at *6 (D. Md. Nov. 5, 2014) (quoting *Mitchell v. United States,* 526 U.S. 314, 321 (1999) (citing *Rogers v. United States,* 340 U.S. 367, 373 (1951)).

*White*, 322 U.S. 694, 699 (1944). Because it is a personal privilege, it cannot be asserted by a collective entity or the custodian of a collective entity's records. *See Bellis v. United States*, 417 U.S. 85, 88 (1974). The Supreme Court stated in *United States v. White* that "[t]he official records and documents of the organization that are held by [its officers] in a representative rather than a personal capacity cannot be the subject of the personal privilege against self-incrimination, even though the production of the papers might tend to incriminate them personally." 322 U.S. at 699; *see also U.S. v. Wujkowski,* 929 F.2d 981 (4th Cir. 1991) (stating that "a collective entity such as a corporation has no Fifth Amendment rights") (citing *Braswell v. U.S.,* 487 U.S. 99 (1988)).   In *Bellis v. United States*, the Supreme Court held that the records of an organization which has a "recognizable juridical existence apart from its members" are outside the ambit of the Fifth Amendment and not protected by the constitutional privilege. *Bellis,* 417 U.S. at 87 (internal quotation marks omitted). Thus, a custodian of corporate records may not resist a subpoena for such records on the ground that the act of production would incriminate him in violation of the Fifth Amendment, because such a custodian does not hold the records in a purely personal capacity, but only as agent of the collective entity. *Braswell*, 487 U.S. at 117–18. Each of the bank accounts are held by a separate limited liability company or corporation, with Debtor having custody and control over those accounts and documents associated with those accounts solely in a representative capacity as member or officer of the limited liability company or corporation.[6] Accordingly, the Court finds that the collective entity exception applies to prevent Debtor from

---

[6]      It is not relevant that the Subpoena, though seeking corporate records, is addressed to Debtor personally. *U.S. v. Ali*, 2014 WL 5790996, at *8 (D.Md. Nov. 5, 2014) (citing *Dreier v. U.S.*, 221 U.S. 394, 399 (1911) ("By virtue of the fact that they were the documents of the corporation in his custody, and not his private papers, he was under an obligation to produce them when called for by proper process.")).  Since the Channel Partner entities are limited liability companies or corporations, Debtor cannot rely on *U.S. v. Doe* to provide him with an opportunity to show that the act of production privilege applies because *Doe* only applies to owners of sole proprietorships.  465 U.S. 605 (1984); *Braswell,* 487 U.S. at 104.

seeking protection of the Channel Partners bank account statements under the Fifth Amendment act of production privilege.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court finds that the Channel Partner bank statements from 2016-2018 do not qualify for protection under the Fifth Amendment privilege against self-incrimination.  Debtor is hereby ORDERED to fully comply with the Subpoena and produce the outstanding documents set forth in Movant's Response to the Order Requiring Discovery filed on February 20, 2020, including, but not limited to, the Channel Partners bank statements from 2016-2018, to Movant within ten (10) days of the entry of this Order.  The Court will consider Movant's request for sanctions by separate order.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**03/06/2020**



US Bankruptcy Judge
District of South Carolina

Entered: 03/06/2020