# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 19-05657-JW |
| | Chapter 7 |
| Amir Golastan Parast, | |
| | **ORDER APPROVING FINAL FEE** |
| Debtor(s). | **APPLICATION OF BEAL, LLC** |

This matter comes before the Court on the Second and Final Application for Compensation ("Final Fee Application") filed by Beal, LLC ("the Firm"), former counsel to Amir Golastan Parast ("Debtor").  A hearing on the Final Fee Application was held by videoconference pursuant to Amended Operating Order 20-03[1] with the following participants: Debtor, appearing *pro se*, and Michael Beal ("Mr. Beal") and Tara Nauful ("Ms. Nauful"), appearing for the Firm. Michelle Vieira, the Chapter 7 Trustee, and her counsel, Christine Brimm, participated in the hearing by telephone.  Prior to the hearing, the parties stipulated to the admission of all exhibits and consented to this Court entering final orders and judgments in this proceeding.[2]  Pursuant to Fed. R. Civ. P. 52, which is made applicable to this matter by Fed. R. Bankr. P. 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.[3]

## FINDINGS OF FACT

1.      Prior to the commencement of this bankruptcy case, Debtor was involved in two separate and significant legal matters which precipitated Debtor's bankruptcy filing:

---

[1]      Amended Operating Order 20-03 was filed on April 22, 2020.

[2]      The Court also takes judicial notice of the pleadings filed on the docket. *See Anderson v. Fed. Deposit Ins. Corp.,* 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (stating that the court may "properly take judicial notice of its own records").

[3]      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and vice versa.

(1) a highly contested divorce proceedings initiated by Kristin Golestan ("Mrs. Golestan") in the Family Court in Charleston County, South Carolina and (2) a criminal indictment against Debtor for multiple counts of wire fraud in the United States District Court for the District of South Carolina.  On February 20, 2019, the Family Court entered a *Pendente Lite* Order containing provisions for the temporary joint custody of the parties' minor children; for Debtor's continuing payments of certain property, life, and health insurances, utilities, and taxes related to the family's residence on Tradd Street and the vehicle used by Mrs. Golestan; for Debtor's monthly payment of  $25,000 to Mrs. Golestan; for the appointment of, and Debtor's payment of $3,000 to the Guardian *ad Litem*; and the payment of $295,000 toward Mrs. Golestan's attorney and accounting fees.  On September 10, 2019, Debtor filed a motion seeking relief from the *Pendente Lite* Order, asserting an inability to pay Mrs. Golestan based upon his business's loss in revenue due to the federal criminal indictment.[4]

2. Based on Debtor's failure to comply with the *Pendente Lite* Order, the Family Court entered a Contempt Order on October 4, 2019 requiring Debtor's confinement in the Charleston County Detention Center if he failed to purge his contempt by paying the court ordered payments by October 27, 2019.[5]  Debtor ultimately failed to purge his contempt and the matter was set for a hearing on October 29, 2019, the result of which was expected to be the issuance of a bench warrant for Debtor's arrest and confinement.  The Family Court also issued an order on October 18, 2019, granting Mrs. Golestan's Motion to Quash Debtor's Subpoenas and for a Protective Order, noting

---

[4]     This motion was scheduled for a hearing before the Family Court on October 29, 2019.
[5]     This Order was issued prior to the scheduled hearing on Debtor's Motion for Relief from the *Pendente Lite* Order.

2

Debtor's continued failure to comply with the *Pendente Lite* Order and prohibiting Debtor from conducting further discovery until he complied, as well as ordering Debtor to pay an additional $225,000 as an advance on Mrs. Golestan's future attorney's fees.

3.      On October 28, 2019, the day prior to the scheduled Family Court hearing, Debtor commenced this bankruptcy case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  As debtor-in-possession, Debtor remained in possession of all assets of the Chapter 11 estate until February 14, 2020, when he voluntarily converted the case to a case under Chapter 7 of the Bankruptcy Code.

4.      At the time of the filing of the petition, Debtor was represented by Campbell Law Firm, PA and its employment was approved by the Court without objection.

5.      On November 11, 2019, Debtor filed his Schedules and Statements, which listed Mrs. Golestan as a creditor holding a domestic support claim of approximately $50,000.00 and a "non-support obligation [for] court ordered professional fees from domestic proceedings" in the amount of $560,000.00. The Schedules also showed that many of Debtor's assets were co-owned with Mrs. Golestan, including interests in two LLCs.

6.      Just weeks after the filing, at Debtor's request, Campbell Law Firm, PA moved to withdraw as counsel for Debtor on November 14, 2019.  Mrs. Golestan objected to the withdrawal, which caused the matter to be set for a hearing, resulting in a delay in the Court's approval of Campbell Law Firm, PA's withdrawal.

7.      On November 19, 2019, Debtor requested that the Firm assume his representation in the Chapter 11 case.  In doing so, Debtor indicated that there was some

urgency in obtaining representation because his Initial Debtor Interview by the United

States Trustee ("UST") was scheduled for November 21, 2019.[6]

8.       Because Debtor sought to retain the Firm post-petition, the Firm was unable

to obtain a pre-petition retainer directly from Debtor.  Therefore, the Firm required a

$25,000 retainer (the "Retainer") to be paid by Debtor's brother, Amin Golestan, as a gift

paid to the Firm for the benefit of Debtor. The Firm also requested a $25,000 guaranty

from Debtor's parents to cover additional fees incurred by the Firm that exceeded the

Retainer.

9.       To memorialize the agreement regarding representation in this bankruptcy

case, Debtor and the Firm signed an "Engagement Letter" on November 26, 2019, which

set forth the financial terms and other terms and conditions of the engagement.[7]   The

Engagement Letter provided, in pertinent part, that:

> [The Firm's] acceptance of this engagement is conditioned upon the
> immediate receipt of a retainer in the amount of $25,000.  The
> retainer will be paid by Amin Golestan [Debtor's brother] and will
> be wired directly into our trust account.  The $25,000.00 is a gift
> from Amin Golestan for your benefit.  We will hold the retainer in
> our trust account as security until the end of the case or termination
> of this engagement and apply the retainer to any unpaid fees and
> costs….Notwithstanding execution of the engagement letter and
> funding of the retainer, your retention of [the Firm] as counsel is
> also subject to Bankruptcy Court approval.  If [the Firm] is not
> approved by the Court on terms acceptable to [the Firm] this
> Engagement Letter will be void and the retainer will be returned to
> Amin Golestan.

10.       According to time records submitted into the record, the Firm rendered

limited services in the case on November 22, 2019 associated with the preparation of an

---

[6]        The UST subsequently continued the Initial Debtor Interview to December 2, 2019 because
Debtor was attempting to locate new counsel.
[7]        The Engagement Letter did not include a provision requiring Debtor's parents to provide a
$25,000 guaranty and the parents were not parties to the Engagement Letter.

Application and Affidavit for Employments and discussions related thereto with the UST. From November 25, 2019 until November 27, 2019, the Firm, primarily through the work of Ms. Nauful, worked to familiarize itself with Debtor's case, met with Debtor, reviewed the Family Court and criminal proceedings, communicated and discussed issues on Debtor's behalf with the Campbell Law Firm, the UST, Debtor's criminal counsel and Mrs. Golestan's bankruptcy counsel, the McCarthy Law Firm ("McCarthy"),

11.     On November 27, 2019, Ms. Nauful met with Debtor to discuss the contempt orders issued by the Family Court and the Guardian *Ad Litem* Order ("GAL Order") issued by the Family Court.  That same day, Ms. Nauful also met with Debtor's criminal defense counsel to discuss Debtor's actions described in the GAL Order and 5th Amendment issues that might be implicated in Debtor's 341 meeting of creditors and Rule 2004 Examination.

12.     From November 28, 2019 through December 1, 2019, the Firm provided the following services on Debtor's behalf: (1) submitted the initial application for employment ("Initial Employment Application"); (2) drafted and filed an objection to the § 362 motion filed by TBG Funding; (3) had multiple meetings with Debtor to prepare him for the Initial Debtor Interview, 341 Meeting of Creditors, and Rule 2004 Examination; (4) negotiated with McCarthy a one-week continuance of the 2004 Examination;[8] (5) reviewed the record in preparation for the Initial Debtor Interview and 341 Meeting of Creditors; and

---

[8]     McCarthy conditioned the one-week postponement of the 2004 examination upon Debtor's agreement to (a) provide supplements to the schedules to provide information regarding Debtor's multiple LLCs and (b) participate in a settlement conference with Mrs. Golestan, which the parties agreed would take place on December 6, 2019.  Ms. Nauful testified that, with Debtor's consent, she agreed to McCarthy's conditions and provided the requested documents by the agreed upon deadline.

(6) communicated with Debtor regarding the production of documents to both the UST and McCarthy.

13.    The Firm's Initial Employment Application was filed on November 29, 2019.  No objection was filed to the Initial Employment Application by Debtor or Debtor's brother.  The UST filed an objection raising concerns regarding the Firm's receipt of the retainer from Debtor's brother, one of Debtor's creditors, without assurances by written affidavit that Debtor's brother was not seeking repayment.

14.    On December 2, 2019, Ms. Nauful appeared as prospective counsel for Debtor at the Initial Debtor Interview and 341 Meeting of Creditors.

15.    After attending the Initial Debtor Interview and 341 Meeting of Creditors, Ms. Nauful provided the following additional services for Debtor: (1) obtained and reviewed Campbell Law Firm's file in the matter; (2) reviewed the first set of documents provided by Debtor, identifying privileged and confidential information; (3) supervised the preparation of documents for production to McCarthy and the United States Trustee; (4) drafted and negotiated the terms of a consent protective order with McCarthy; (5) provided supplements to the schedules and certain documentation to McCarthy pursuant to a subpoena and its request; (6) prepared "DSO letters" to Kristin Golestan and DSS; (7) began negotiations with counsel for TBG Funding regarding the resolution of its § 362 Motion, and obtained counsel's agreement to continue the hearing on the motion until a settlement proposal could be reached and a real estate broker retained and engaged; (8) exchanged numerous and detailed emails and phone calls with Debtor regarding case issues; (9) entered into discussions with McCarthy, the UST, and Campbell Law Firm regarding the resolution of Kristin Golestan's objection to Campbell Law Firm's motion

to withdraw as counsel; (10) contacted criminal case professionals and discussed with them the need for them to be retained as estate professionals; and (11) arranged to speak with the attorney who represented Debtor in connection with the criminal case to obtain more background and information on the criminal case and the issues presented.

16.    As a condition of receiving a one-week postponement of his Court ordered Rule 2004 Examination, Debtor agreed to participate in a settlement conference with Mrs. Golestan on December 6, 2019.  On the evening of Thursday, December 5, 2019, Debtor emailed Ms. Nauful and informed her that he had decided not to attend the December 6th settlement conference unless his estranged wife agreed to provide him with increased visitation with their minor children.  On Friday, December 6, 2019, Ms. Nauful and Mr. Beal each responded to Debtor's email, urging Debtor to attend the settlement conference and participate in good faith.  Debtor ultimately agreed to and did attend the settlement conference.

17.    Ms. Nauful testified that in her opinion the settlement conference was very important to the successful outcome of the case because Mrs. Golestan was a critical creditor in the case and the resolution of the financial disputes and claims held by Mrs. Golestan was an important component of Debtor's Chapter 11 reorganization.[9]  She further testified Mrs. Golestan had an interest in a significant portion of the estate's assets by virtue of her marriage to Debtor as well as indirectly as a member of various LLCs set up by her and Debtor.  Although no formal settlement was reached at the December 6th settlement conference, Ms. Nauful testified that the meeting was productive because the parties were

---

[9]    Ms. Nauful testified that she was concerned that if Debtor did not reach a settlement with Mrs. Golestan, she would use the existence of the pre-petition criminal fraud allegations as the basis for seeking the appointment of a Chapter 11 Trustee.

able to reach agreements in principle on the disposition of the major physical assets of the case: two residences, the office property, and $600,000 worth of furniture stored in London, England.

18.    From December 7, 2019 through December 8, 2019, Ms. Nauful prepared for the December 9, 2019 Rule 2004 Examination by reviewing pertinent documents and investigating other issues in the criminal and family court cases.  Ms. Nauful also communicated with Debtor via email and text message to remind him of the date, time and location of the Rule 2004 Examination, confirming his attendance, and checking on the status of continued document production.

19.    On Monday, December 9, 2019, Ms. Nauful met McCarthy and the court reporter at the location of the Rule 2004 Examination.  Several other attorneys, including Ms. Gasparini on behalf of the UST, appeared telephonically.

20.    Shortly before the scheduled time of the Rule 2004 Examination, Debtor notified Ms. Nauful by email that he had decided not to attend his Rule 2004 Examination and invited Ms. Nauful and McCarthy to meet him at his office at 3:00 p.m. to discuss settlement.  The email further stated that Debtor was going to turn his phone off for approximately 90 minutes in order to attend a meeting.  Despite multiple efforts to contact Debtor after receiving Debtor's email, Ms. Nauful was unable to reach Debtor.  The parties waited for one hour after the scheduled time of the 2004 Examination, but Debtor did not appear.

21.    After Debtor's failure to appear at the 2004 Examination, Ms. Nauful emailed Debtor and advised him that the Firm would be withdrawing its Initial Retention Application. Debtor did not respond to this email.

22.     Upon returning to her office, Ms. Nauful sent Debtor another email which detailed the current status of Debtor's bankruptcy case, and summarized the circumstances surrounding Debtor's failure to appear at the 2004 Examination and the possible consequences to Debtor. This email was also copied to Debtor's Family Court attorney and criminal attorneys. Debtor did not respond to this email.

23.     Ms. Nauful testified that from the afternoon of December 9 through the emergency hearing held by this Court on Friday, December 13, she continued to provide Debtor with updates regarding his case, including providing him with copies of pleadings and notices filed.  She testified that Debtor did not respond to any of her communications.

24.     On December 13, 2019, the Court conducted a hearing on multiple matters in the case, including Campbell Law Firm, PA's motion to withdraw (and Mrs. Golestan's objection to the withdrawal), the Firm's Initial Employment Application (and UST objection to the Application), and Mrs. Golestan's Emergency Motion for an Order Requiring Debtor to Appear and Show Cause for his Failure to Attend 2004 Examination and for Contempt and Sanctions. At the hearing, the Court recognized the Firm's withdrawal of its Initial Employment Application.  Debtor was present at the hearing and informed the Court that he did not attend the 2004 Exam because he had to attend a critical meeting with his criminal counsel.[10]

25.     Since the Firm's withdrawal of its Initial Employment Application, Debtor has been unsuccessful in acquiring new counsel to represent him in the bankruptcy case

---

[10]     Debtor later filed a copy of a text message dated December 9, 2019, which appears to contradict his statement to the Court regarding the urgency of his meeting with Mr. Daniel.

and has proceeded *pro se*, expressing his confidence that he could handle his representation.[11]

26.     On December 17, 2019, the Firm filed its First and Final Application for Compensation ("First Fee Application").  Debtor filed an objection to the First Fee Application, asserting that the Firm willfully violated the automatic stay, acted in bad faith, breached its fiduciary duty to Debtor, and that its requested fees were unreasonable and unnecessary.  A hearing was held on the First Fee Application on January 22, 2020, during which the Court never addressed Debtor's Objection due to preliminary issues regarding the Court's ability to award compensation to counsel who had not been employed under 11 U.S.C. § 327, which were taken under advisement.  On February 10, 2020, the Court entered its order denying the First Fee Application without prejudice based upon the Firm's failure to obtain Court approval of its employment due to its withdrawal prior to seeking compensation and according to the terms of the retainer agreement.

27.     On February 13, 2020, the Firm filed a second curative Application to Employ Beal, LLC as Attorney for Debtor ("Beal Retention Application"), and served the same on all parties in interest, including the UST, Debtor, his brother, Amin Golestan, and other parties.

28.     Also on February 13, 2020, the Firm filed the Final Fee Application.  The Final Fee Application was served on all parties in interest, including the UST, Debtor, Amin Golestan, and all parties in interest.

29.     On February 14, 2020, on motion of Debtor, the Court entered an order converting the Chapter 11 case to a case under Chapter 7.  Michelle L. Vieira was appointed

---

[11]     While representing himself, Debtor has filed sophisticated, lawyer-like pleadings, but has denied in Court hearings and by affidavit that he was receiving assistance of undisclosed counsel.

as Chapter 7 Trustee for the case.  On that same day, the Firm served the Chapter 7 Trustee

with the Beal Retention Application and Final Fee Application.

30.    No objections were filed to the Beal Retention Application.[12]  Therefore, on

March 12, 2020, the Court entered its order authorizing the employment of the Firm for

the period of November 21, 2019 through December 13, 2019 ("Firm Retention Order").

The Firm Retention Order was not appealed.

31.    No objections were filed to the Final Fee Application.  On March 12, 2020,

the Court scheduled a definite hearing on the Final Fee Application, which hearing was

continued to April 29, 2020.  Notice of all hearings was served on all parties in interest,

including Debtor and Amin Golestan.

32.    In support of the Final Fee Application, Ms. Nauful testified that the Firm

met the *Barber v. Kimbrell* factors, as follows:[13]

    a.  <u>Time and Labor expended</u>.  The engagement commenced on
       November 21, 2019 and continued through December 13, 2019
       ("Retention Period").  During the Retention Period, the Firm
       spent approximately 87 hours on this case.

    b.  <u>The novelty and difficulty of the questions raised</u>.  This Chapter
       11 case contained several complex issues, namely:

        i.  The pending criminal matter, which involved allegations
           of prepetition fraud by Debtor. This criminal matter
           negatively impacted Debtor's income and his ability to
           fund a plan.

       ii.  The pending and highly contentious domestic matter
           with Mrs. Golestan was a significant distraction for
           Debtor.  The unappealed Family Court Contempt Orders
           also contained significant attorney's fee awards and
           increased the claims in the bankruptcy case;

      iii.  The Firm's assumption of representation in a pending
           Chapter 11 case from another law firm and the delay in

---

[12]    The UST affirmatively did not renew his objection to the Fee Application.
[13]    577 F.2d 216, 226 n.28 (4th Cir. 1978) (setting forth twelve factors for courts to consider when determining a reasonable attorney's fee award)

the withdrawal of the Campbell Law Firm added to the difficulty of the case.

c.  <u>The skill required to perform the legal service properly</u>. A high level of skill is required in Chapter 11 cases generally, and in this case in particular, due to its complex issues.

d.  <u>The preclusion of other employment by the attorney due to acceptance of the case</u>.  This case required almost all of Ms. Nauful's time and attention.  She and the Firm had other matters that they put aside to work on this case.  The Firm accepted the case on an emergency basis, and the pressure of getting up to speed in the middle of a case was significant.

e.  <u>Customary fee</u>.  The fees charged by the Firm are customary for the type of work performed.    The hourly rates of the professionals were disclosed in the Engagement Letter signed by Debtor.  The fees incurred are reasonable and are comparable with fees charged by other professionals in this district with similar experience.

f.  <u>Expectations at the outset of litigation</u>.  As set forth in the Engagement Letter, the Firm was hired on an hourly basis plus costs.  The Firm charged Debtor fees and costs of $36,915.90, not including fees and costs incurred in defense of the fee applications.  The Firm expected that its work for the estate, its creditors, and Debtor would be compensated promptly, subject to the Court's approval.  Ms. Nauful also testified that at the outset of the engagement, the Firm expected that:

   i.  Debtor's parents would timely execute a personal guaranty for the balance of the retainer, but this did not come to fruition;

   ii.  Amin Golestan would timely and promptly pay the Retainer, which the Firm did not receive until December 3, 2019, and would promptly execute an affidavit confirming that the Retainer was a gift, which the Firm never received; and

   iii.  Debtor would cooperate in meeting his statutory duties and obligations as Debtor-in-possession under the Bankruptcy Code and his obligations under the Engagement Letter.

g.  <u>Time limitations imposed by the client or circumstances</u>.  When the Firm was retained, the Chapter 11 case was in a critical stage, and the Firm and its members were under severe time pressures and limitations.

h.  <u>The amount in controversy and the results obtained</u>.  The amount in controversy would best be measured by the total debt of the

case because the Firm's services were necessary to preserve the case.

   i.   <u>The experience, reputation, and ability of the attorneys</u>.  Ms. Nauful testified regarding her education, bar admissions, work history, and her certification as a bankruptcy specialist by the South Carolina Supreme Court, as well as the experience and reputation of the Firm.

   j.   <u>The undesirability of the case.</u>  Representing Debtor in the Chapter 11 case was undesirable because the Firm had to take over a highly litigated case in progress from another attorney as well as deal with complex issues arising from the pending criminal and family court matters.

   k.   <u>The nature and length of the professional relationship with the client.</u>  The engagement was a new one for the Firm and terminated after only a few weeks due to the breakdown in communication and confidence between the Firm and Debtor.

   l.   <u>Awards in similar cases</u>.  Ms. Nauful testified regarding the payment of the Firm's fees in other cases pending in this District. In this case, the record reflects that all of Campbell Law Firm, P.A.'s fees and all of Nelson Mullins' Fees have been approved without objection from Debtor at similar or higher hourly rates.

## CONCLUSIONS OF LAW

### I.   Introduction

After the Firm withdrew its Initial Employment Application, Debtor objected to the Firm's request for compensation on January 9, 2020, on the grounds that (1) the Firm willfully violated the automatic stay by attending a settlement conference with Mrs. Golestan, (2) the Firm acted in bad faith and breached its fiduciary duties to Debtor, and (3) the Firm's services did not provide any material benefit to the bankruptcy estate.[14] After a preliminary hearing on January 20, 2020, the Court denied the request for compensation

---

[14]   Before the deadline to respond to the Firm's First Fee Application (on January 10, 2020 under the "mailbox rule" set forth in Fed. R. Bankr. P. 9006(f)), Debtor submitted an email to the Court on January 9, 2020, advising that he intended to submit a formal objection before 4 p.m. that day.  He did not submit his formal objection until January 14, 2020.

based primarily on the Firm's failure to be employed pursuant to 11 U.S.C. § 327. The denial was without prejudice and did not address Debtor's objection.

Despite Debtor's failure to object to the Firm's renewed motion, the Court set a hearing to consider Debtor's original, unaddressed objection.  In the Joint Statement of Dispute,[15] Debtor again raised his arguments in his objection to the Initial Fee Application, and further argued that compensation should be denied because (1) the Court's approval of the Firm's employment was improper, (2) the Firm's withdrawal as counsel without discussion with Debtor was improper; and (3) the retainer fee is not property of the bankruptcy estate.

## II.    Employment of the Firm

Before reaching the issues raised regarding the appropriateness of the fees requested by the Firm, the Court will first address the approval of the Firm's employment in this case.[16]  Debtor argues that the Firm's employment under 11 U.S.C. § 327 was improper. However, the facts clearly indicate that Debtor solicited the Firm to take over his representation at a critical early stage of his case. Furthermore, Debtor received notice and had the opportunity to object to both the Firm's Initial Employment Application and the Beal Retention Application but did not file an objection to either application.  The Court

---

[15]     A joint statement of dispute is required in contested matters to encourage parties to discuss issues and settlement, exchange exhibits and witness lists as well as estimate the time necessary for the hearing. A joint statement of dispute may not expand issues not raised in the pleadings.

[16]     At the commencement of the hearing, the Firm asked for either confirmation from Debtor on the record that he was waiving the attorney-client privilege, or a ruling from the Court that, through his voluntary and intentional public disclosure of confidential and privileged attorney-client communications between himself and the Firm, Debtor waived the attorney-client privilege as to all communications between himself and the Firm.  In response to questioning from the Court, Debtor confirmed that he was waiving and not asserting the attorney-client privilege with respect to his communications with the Firm, including all Exhibits.  The Chapter 7 Trustee advised the Court that she had elected not to take a position on the issues of Debtor's waiver of the privilege or who (as between Debtor and Trustee) was the holder of the privilege.  Therefore, for purposes of this hearing only, the Court ruled that the attorney-client privilege is waived as to all communications between Debtor and the Firm.

never denied the Firm's Initial Employment Application because it was withdrawn before Court consideration. The request for approval of the Firm's employment was ultimately reasserted by the Beal Retention Application which was properly noticed. Without objection by Debtor or any party, the Court approved the Firm's employment for the period from November 21, 2019 through December 13, 2019 ("Retention Period"). Debtor did not appeal or seek relief from the Order Authorizing the Firm's Employment. *See* Fed. R. Bankr. P. 8002 (requiring a notice of appeal to be filed within 14 days after entry of the judgment, order, or decree being appealed). Debtor cannot now contest a previously entered, unappealed order by merely listing the issue in a joint statement of dispute filed on a different matter. A joint statement of dispute is not properly used to expand litigation at the eleventh hour by raising issues not properly included in the applicable pleadings.

### III.    Approval of Final Fee Application

The issue before the Court is consideration of the Final Fee Application, which seeks compensation for fees and costs incurred by the Firm during the Retention Period. Compensation of professionals retained under 11 U.S.C. § 327, including counsel for Debtor-in-possession in a chapter 11 case, is governed by 11 U.S.C. § 330, which provides in relevant part:

> the court may award to … a professional person employed under section 327 or 1103—
> (A) reasonable compensation for actual, necessary services rendered by … professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

As expressed in the Joint Statement of Dispute, Debtor objects to approval of the Final Fee Application because in his view:

> [It] requests an award for services that were unnecessary and
> are therefore not compensable.  The Firm has simply not
> shown that the duplication of work, vague, unclear and/or
> inappropriate requests were necessary to the administration
> of the case.  The Firm's services did not result in an
> identifiable, tangible, and material benefit to the bankruptcy
> estate.

Debtor further argues that the Final Fee Application should be denied because the Firm

breached the Engagement Letter and therefore the Firm "cannot frustrate and breach the

agreement and then seek to enforce it."  Debtor raised similar arguments in his objection

to the Initial Fee Application.

   *a.  Standing*

   The Firm asserts that Debtor lacks standing to object to the Final Fee Application

because he failed to timely file an objection to it. While Debtor did not file a formal

objection to the Final Fee Application, he did not withdraw his objection to the Initial Fee

Application and filed a joint statement of dispute with the Firm which referenced his earlier

stated arguments in support of a reduction or denial of a fee award to the Firm in this case.

   The Firm further argues that the conversion of the case to Chapter 7 provides an

additional ground to overrule Debtor's objection.  As recognized by this Court and others,

"[t]he general rule in the Fourth Circuit is that a Chapter 7 debtor only has standing if it

can be demonstrated that he has a pecuniary interest in the distribution of his assets among

his creditors." *Anderson v. Simchon (In re Southern Textile Knitters, Inc.),* C/A No. 98-

07203-W, Adv. Pro. No 99-80026-W, slip op. at 6 (Bankr. D.S.C. May 24, 1999); *accord*

*Yarid v. OCWEN Loan Servicing, LLC,* 2018 WL 3631883 (E.D.Va. July 31, 2018); *see*

*also Carrington Mtg. Serv., LLC v. Riley (In re Riley),* C/A No. 09-4740-dd, Adv. Pro. No.

11-80115-dd (Bankr. D.S.C. Sept. 26, 2012) ("Because an insolvent debtor does not stand

16

to receive any funds from the administration of his estate, he has no pecuniary interest in such administration and therefore lacks standing to object to the validity of proofs of claim filed in his bankruptcy case.").  The Fourth Circuit has stated that a debtor bears the burden of demonstrating the solvency of his estate to establish standing to challenge a proposed disposition of an estate asset. *Willemain v. Kivitz,* 764 F.2d 1019 (4th Cir. 1985). Debtor did not present any evidence indicating solvency of the Chapter 7 estate in this case so as to demonstrate that he has the necessary pecuniary interest in the administration of the assets to establish his standing to object to the payment of a Chapter 11 administrative expense claim. Therefore, his objection is overruled for lack of standing.  Nevertheless, the Court also concludes that Debtor's objections should be overruled on their merits, as addressed more fully below.

> b.  *The Firm's Services were Actual and Necessary and Beneficial to the Estate*

It is undisputed that the Engagement Letter is a valid and enforceable contract between Debtor and the Firm. Based on the evidence presented, the Court is unable to find a breach of the terms of the Engagement Letter by the Firm.[17]  The evidence before the Court indicates that Debtor solicited the Firm's services and the Firm provided reasonable legal services to meet his needs throughout the course of its engagement as counsel for Debtor.  As is apparent by the record of this case, Debtor's ongoing and highly contested domestic issues dominated the time and resources of this Court during the early stages of the case. These issues were critical not only regarding the division of assets necessary for payment of creditors, but also due to the pending contempt proceedings in the Family Court

---

[17]     Debtor appears to be unhappy with the Firm's termination of their engagement without discussing the matter with him prior to filing their withdrawal of the initial application for employment.  However, the evidence indicates that the Firm made several unsuccessful attempts to contact Debtor prior to filing the withdrawal.

which might result in Debtor's incarceration. Much of the Firm's efforts were directed towards resolving bankruptcy issues related to those ongoing domestic issues which appeared important to the success of Debtor's Chapter 11 bankruptcy case. Based on the evidence presented, the Court finds the Firm's efforts on behalf of Debtor during the Retention Period were actual and necessary services that provided a benefit to Debtor. There is no evidence supporting Debtor's assertions that the services provided by the Firm were unnecessary or that they did not result in an identifiable, tangible, and material benefit to the estate.

     c. *The Firm's Request for Compensation is Reasonable*

When determining the amount of reasonable compensation to be awarded to a professional person, 11 U.S.C. § 330(a)(3) instructs the Court to "consider the nature, extent, and value of such services, taking into account all relevant factors," including the following:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

To determine a reasonable attorney's fee award, courts also apply the lodestar method, which requires a determination of the number of hours reasonably spent on a matter

multiplied by a reasonable hourly rate for such services. *See Weatherford v. Timmark (In re Weatherford)*, 413 B.R. 273, 289 (Bankr. D.S.C. 2009) (citing *Daly v. Hill,* 790 F.2d 1071, 1077 (4th Cir. 1986)).  In addition, the Fourth Circuit has adopted the twelve-factor test set forth in *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir. 1978) for evaluating attorney's fee awards.[18]

At the hearing, Debtor did not argue against the amount of time the Firm spent on his case or the amount of the Firm's hourly rates.  Ms. Nauful presented testimony in support of each of the factors set forth in § 330(a)(3) and in *Barber v. Kimbrell's, Inc*. Debtor did not present any evidence to contradict Ms. Nauful's testimony regarding the reasonableness of the fees or any of the other factors.  Therefore, the Court finds that the rates and amounts charged to Debtor by the Firm were reasonable.  The Court further observes that the Chapter 7 Trustee had notice of both the Beal Retention Application and the Final Fee Application and did not object to the employment of the Firm or reasonableness of the fees requested.  For the foregoing reasons, the Court finds that the Firm's Final Fee Application should be approved.

---

[18] Those factors include:

(1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectation at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and his or her client; and (12) attorney's fees awards in similar cases.

## IV.    Additional Issues Raised by Debtor

### A. *Violation of the Automatic Stay*

Debtor argues that the Firm "knowingly and willfully violated the automatic stay by engaging in a settlement discussion that included division of property that is property of the bankruptcy estate.  The automatic stay prohibits the prosecution of equitable distribution claims, absent relief from the automatic stay."

The automatic stay of 11 U.S.C. § 362 prohibits the commencement or continuation of certain actions against a debtor or against property of the estate that were or could have been commenced pre-petition. *See* 11 U.S.C. § 362(a). To state a claim for a willful violation of the automatic stay, Debtor must prove the Firm "(1) violated the stay imposed by § 362(a), (2) that the violation was willful, and (3) that the plaintiff was injured by the violation." *Houck v. Substitute Trustee Services, Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). The evidence indicates that the settlement conference with Mrs. Golestan was held with Debtor's consent and participation and that the Firm was authorized by Debtor to participate in the negotiations on his behalf.  Furthermore, while the animosity arising from the domestic litigation was apparent in hearings before the Court, ultimately resulting in the granting of relief from the stay to Mrs. Golestan, that does not negate, but supports, the reasonableness of conducting a settlement conference.  Debtor has offered no proof or persuasive evidence to show that the Firm's advice to attend such a settlement conference was a violation of the automatic stay.  Debtor provided no testimony or other evidence to prove any recoverable damages caused by the alleged violation. The Court finds that Debtor has failed to meet his burden of demonstrating a violation of the automatic stay under 11 U.S.C. § 362(k).

### B.  Breach of Fiduciary Duty and Bad Faith

Debtor further argues that the Firm breached its fiduciary duties to Debtor and acted in bad faith "not only by violating the automatic stay, but also by not representing the best interests of its client."  He argues that the Firm did not represent his best interests by withdrawing as counsel in bad faith after he forewarned Ms. Nauful that he would not attend the 2004 Examination.  In light of the Court's conclusion above that the Firm did not violate the automatic stay and that its services were necessary and beneficial to the estate, Debtor's claim for breach of fiduciary duty or bad faith is denied.

To establish a claim for breach of fiduciary duty, Debtor must prove (1) the existence of a fiduciary duty, (2) a breach of that duty owed to Debtor by the Firm, and (3) damages proximately resulting from the Firm's wrongful conduct. *RFT Mgmt. Co., LLC v. Tinsley & Adams L.L.P.,* 732 S.E.2d 166, 173 (S.C. 2012) (*citing Moore v. Moore,* 599 S.E.2d 467 (Ct. App. 2004).  It is undisputed that, as counsel for Debtor, the Firm owed a fiduciary duty to Debtor.  "Our courts have long recognized that an attorney-client relationship is, by its very nature, a fiduciary relationship." *Spence v. Wingate*, 395 S.C. 148, 158, 716 S.E.2d 920, 926 (2011).

Debtor argues that the Firm's withdrawal as counsel without first speaking with Debtor constituted a breach of its fiduciary duties to Debtor.  Debtor's contract with the Firm provided that "[The Firm] may terminate this representation by written notice to [Debtor] if [Debtor] fail[s] to cooperate with any reasonable request from [the Firm] relating to this representation."  The evidence presented indicates that the Firm was acting in good faith and with due regard to Debtor's interests by providing legal services to Debtor throughout the Retention Period and, in particular, by preparing Debtor for the court

ordered Rule 2004 examination and representing Debtor at such examination, which

Debtor elected not to attend.  The evidence indicates that the Firm attempted to contact

Debtor several times by telephone, text message and e-mail before filing the withdrawal

and met the requirements of the Engagement Letter for termination of services. Under the

circumstances, the Court is unable to conclude that the Firm's withdrawal as counsel

constituted a breach of its fiduciary duties to Debtor.  Debtor presented no evidence of any

other breach by the Firm of its fiduciary duties.

### V.       Application of Retainer to Fees

The Firm seeks an allowed administrative priority claim in the total amount of

$36,915.90.  Based upon the foregoing, the Court concludes that the Firm's claim should

be allowed in full in the amount of $36,915.90 as a Chapter 11 administrative expense

pursuant to 11 U.S.C. §§ 503(b)(2) and 507(a)(2), which would be subordinate to Chapter

7 expenses under 11 U.S.C. § 726(a)(1).  In the Application, the Firm further seeks court

authorization to apply the $25,000 Retainer in its possession towards partial payment of its

claim, with such application reducing its allowed administrative priority claim.   This

Application was served on Debtor, Debtor's brother, Amin Golestan, the UST, the Chapter

7 Trustee, and all other parties in interest, and no objection was filed. As expressed in the

Joint Statement of Dispute, Debtor argues that the Retainer should not be applied to pay

part of the Firm's claim because the Court previously held that the Retainer was not

property of the estate.  Debtor asserts that the Retainer should be returned to his brother

under the terms of the Engagement Letter.

The Engagement Letter provided that "[t]he $25,000.00 is a gift from Amin

Golestan for [Debtor's] benefit.  We will hold the retainer in our trust account as security

until the end of the case or termination of this engagement and apply the retainer to any

unpaid fees and costs." It further provided that "[i]f [the Firm's employment] is not

approved by the Court on terms acceptable to [the Firm] this Engagement Letter will be

void and the retainer will be returned to Amin Golestan." Since the Firm withdrew any

request for employment under the Initial Employment Application, a condition of the

Engagement Letter was unfulfilled at the time of the Court's consideration of the Firm's

first application for compensation. Therefore, the Court concluded that, at that time, the

Retainer did not yet constitute a completed gift to Debtor under South Carolina law and

was therefore not property of the estate and denied the application for compensation.[19]

However, that finding was without prejudice to the condition being met. *See In re Parast,*

612 B.R. 698, 708 (Bankr. D.S.C. 2020). Since the entry of that order, the Firm has sought

and obtained approval of its employment by the Court without objection by Debtor, his

brother or the UST, thus rendering the condition satisfied and completing the gift to Debtor

which was clearly intended to serve as security for payment of fees and expenses. The

Court is further persuaded in this result by the lack of objection or appearance, despite

proper service, of Amin Golestan, the party who could assert an interest in the retainer.

Under South Carolina law, it appears that a conditional gift becomes a completed,

enforceable gift once the condition is fulfilled. *See Campbell v. Robinson,* 726 S.E.2d 221,

225 (S.C. Ct. App. 2012). The terms of the Engagement Letter indicate that the parties,

including Amin Golestan, intended the retainer fee to serve as security for payment of fees

incurred as a result of the Firm's representation of Debtor-in-possession in this bankruptcy

case. In its prior order, the Court also observed that courts in other jurisdictions have held

---

[19]     The Firm also made the argument that the retainer was not property of the estate during the
hearing on the Initial Fee Application.

that funds held by debtor's counsel as security retainers remain property of the estate until the attorney applies for payment of funds for the services rendered. *In re Parast,* 612 B.R. at 708 n. 18 (citing *In re King,* 392 B.R. 62, 70 (Bankr. S.D.N.Y. 2008) (stating that a debtor retains an interest in the funds in a "security" retainer until services are rendered by the attorney and therefore such a retainer is property of the estate); *In re Carolina Premier Med. Grp., P.A.,* No. 00-82322, 2001 WL 1699220, at *3) (Bankr. M.D.N.C. 2001) (finding that funds comprising a security retainer remain property of the estate until the attorney applies for the payment of funds for services rendered). Therefore, the Court finds that the retainer fee became property of the estate upon fulfillment of the condition through the Court's approval of the Firm's employment, which finalized the gift intended by Amin Golestan. *See* 11 U.S.C. § 541 (a)(7) (providing that property of the estate includes "any interest in property that the estate acquires after the commencement of the case"). Accordingly, Debtor's objection to the Firm's application of the retainer fee towards its fees is overruled and the Firm is hereby authorized to apply the retainer fee in partial payment of its allowed administrative claim.

## CONCLUSION

For the reasons set forth herein, it is hereby:

ORDERED that Debtor's objections to the Final Fee Application are overruled; it is further

ORDERED that the Final Fee Application is approved, and the Firm is entitled to an allowed Chapter 11 administrative priority claim in the total amount of $36,915.90 ("Award"); and it is further

ORDERED that the Firm may apply the Retainer in its possession in partial payment of the Award, which application shall reduce the allowed Chapter 11 administrative priority claim to $11,915.90.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**06/08/2020**



John E Waites

US Bankruptcy Judge
District of South Carolina

Entered: 06/08/2020